Parella, et al. v. Retirement of RI    CV-96-434-M    02/27/98
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Gaetano Parella, Mildred Tantimonaco,
John Gilgun, Helena McDermott, and
Delores Ferry, on behalf of themselves
and others similarly situated,

      Plaintiffs

            v.                          N.H. Civil No. 96-434-M
                                        R.I. Civil No. 95-358

Retirement Board of the Rhode
Island Employees' Retirement
System, et al.,

_____Defendants.


                         **O R D E R**


      After recovering vested pension benefits which were

unconstitutionally withheld from them (albeit only temporarily)

and securing an award of prejudgment interest, plaintiffs now

move for an award of attorneys' fees pursuant to 42 U.S.C. §

1988.  Defendants object.


                      **Factual Background**

      The factual and procedural history of this case is discussed

at length in the court's order dated March 31, 1997.

Nevertheless, a brief review of the relevant facts and history

might be helpful.

In 1994 the State of Rhode Island and the Internal Revenue Service entered into an agreement aimed at preserving the qualified trust status of the Employees' Retirement System of the State of Rhode Island ("ERS"). See generally 26 U.S.C. § 401(a) (outlining requirements for maintaining the qualified tax status of pension plans). Pursuant to that agreement, the Rhode Island Legislature capped state legislators' annual pensions at $10,000 — the maximum amount tax qualified pension plans were then permitted to pay under 26 U.S.C. § 415(b). See R.I. Gen. Laws §§ 36-8-20(e) and 36-10-10.1(e) (the "Act"). The Act became effective in July 1995.

Plaintiffs are members of a class consisting of retired Rhode Island legislators and surviving spouses of legislators who, prior to July 1995, were receiving annual retirement benefits in excess of $10,000. Seeking to enjoin enforcement of the Act's $10,000 annual limitation, plaintiffs brought this action in the United States District Court for the District of Rhode Island, naming as defendants the Retirement Board of the Rhode Island Employees' Retirement System (the "Board") and Nancy Mayer and Joann Flaminio, in their official capacities. See 42 U.S.C. § 1983. Among other things, plaintiffs claimed that the

2

Act deprived them of property without due process of law and just compensation, in violation of the United States Constitution.

The court denied plaintiffs' request for an order temporarily restraining defendants from implementing or enforcing the Act. Following an evidentiary hearing, the court denied plaintiffs' request for a preliminary injunction, concluding that plaintiffs had failed to demonstrate that they would suffer irreparable injury in the absence of a preliminary injunction. The court noted, however, that plaintiffs were likely to prevail on the merits. Shortly thereafter, the case was transferred to this district upon recusal of the judges sitting in the District of Rhode Island.

In August of 1996 Congress enacted the Small Business Job Protection Act of 1996 which, among other things, amended § 415 of the Internal Revenue Code, retroactively to December 31, 1994. The parties agreed that the amendments to § 415 made it possible for ERS and the Board to reinstate plaintiffs' full vested retirement benefits and repay all amounts previously withheld, without risk that such payments might adversely affect ERS's federal tax status. Accordingly, on September 6, 1996, plaintiffs filed a motion for interim relief, seeking an order

3

compelling defendants to actually resume paying each class member the full vested monthly retirement benefit to which he or she was entitled and to promptly pay retirement benefits withheld during the pendency of this litigation. Defendants did not oppose the requested relief. Approximately two months later, defendants resumed paying plaintiffs their full vested retirement benefits and paid all past benefits which had been withheld (totaling nearly $850,000).

Subsequently, plaintiffs moved for an order compelling defendants to pay them additional compensation, in the form of prejudgment interest. They argued that such an award was necessary to fully and adequately compensate them for the harm suffered during the period defendants wrongfully withheld that part of their annual pension benefits exceeding $10,000. The court agreed, concluding that:

> the Act, as applied, unconstitutionally deprived plaintiffs of "property" without just compensation, in violation of the Fifth Amendment. The relevant factors identified by the Supreme Court in Penn Central, supra, support the conclusion that plaintiffs suffered an unconstitutional deprivation of property: the Act, as applied, had a substantial adverse "economic impact" upon plaintiffs; it interfered with plaintiffs' legitimate, distinct investment-backed expectations, Ruckelshaus v. Monsanto, 467 U.S. at 1011; and the character of the governmental action, although defying precise definition, is more akin to a "physical invasion" or confiscation of plaintiffs' property,

4

rather than simply a readjustment of economic benefits
and burdens (e.g., this is not analogous to the
exercise of the state's power to levy taxes nor is it a
situation in which the state could reasonably conclude
that taking plaintiffs' property was reasonably
necessary to promote the health, safety, morals, or
general welfare of the public.).

Parella v. Retirement Board of the R.I. Employees' Retirement

System, No. 96-358-M, slip op. at 12 (D.N.H. March 31, 1997).[1]

The court then concluded that while ERS (acting through the

Board) might be liable as a state actor under 42 U.S.C. § 1983,

it was not entitled to immunity under the Eleventh Amendment.

Id., at 21 ("Having considered all of the relevant factors,

including those identified by the Supreme Court and the Court of

_____

[1] Curiously, in a series of footnotes, defendants
repeatedly argue that the "taking" issue was a "new issue . . .
not [previously] made known to the parties." Defendants'
Objection at 10 n.12. See also Defendants' Objection at 4 n.4
("That issue had not been briefed by the parties . . ..");
Defendant's Objection at 9 n.11 ("In fact, the court did not
address the issues raised in the parties' summary judgment
motions, but rather a new issue the Court raised sua sponte
. . .").

Defendants seem to imply that they were caught unawares
when the court ruled that the Act, as applied, effected an
unconstitutional taking. The basis for that claim is, however, a
mystery. In light of the allegations contained in plaintiffs'
complaint and the legal arguments presented in their motion for
summary judgment specifically addressing the "taking" issue,
defendants' claims are, at best, ill-supported. See, e.g.,
Amended Class Action Complaint for Declaratory and Injunctive
Relief at paras. 3, 33-35; Plaintiffs' Memorandum of Law in
Support of Motion for Summary Judgment at 31-35.

Appeals, the court concludes that ERS is not an alter ego or arm of the State of Rhode Island. Accordingly, neither ERS nor the Board is entitled to the protections afforded to the states by the Eleventh Amendment."). The court then granted plaintiffs' motion for additional compensation and awarded them in excess of $31,000 in prejudgment interest.

In light of the court's prior rulings in this matter, plaintiffs claim that they are "prevailing parties," entitled to reimbursement for reasonable costs and attorneys' fees expended in this litigation. See 42 U.S.C. § 1988. Defendants object, generally asserting that plaintiffs are not properly viewed as prevailing parties and arguing, in broad terms, that the requested fees and costs are somehow disproportionate to plaintiffs' success on the merits. With one exception, however, defendants make no effort to identify as excessive or unnecessary any of the specific services provided by plaintiffs' counsel nor do they challenge the hourly rates charged by counsel.[2]

_____

[2] Defendants do say that plaintiffs should not recover any costs or fees associated with the preparation and filing of their motion for interim relief which, based upon the court's review of plaintiffs' submissions, appear to comprise substantially less than $3,000 of the total award sought. Although the court denied plaintiffs' motion as moot in light of defendants' reiterated pledge to resume full benefit payments to plaintiffs, the motion for interim relief certainly coaxed defendants to get off the proverbial dime and speed up the process of reimbursing

**Discussion**

I.  "Prevailing Party" Status.

In Farrar v. Hobby, 506 U.S. 103 (1992), the Supreme Court described a "prevailing party," in the context of section 1988, as follows:

> [A] plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

Id., at 111-12.  Accordingly, as the Court noted approximately three years earlier, the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fees statute."  Texas Teachers' Assoc. v. Garland School Dist., 489 U.S. 782, 792-93 (1989).  Success on any significant issue in the litigation which achieves some of the benefit sought in bringing the action is sufficient to qualify the recipient of the benefit as a "prevailing party."  Id., at 791-92 (citing Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).

plaintiffs (which, even after the filing of plaintiffs' motion, took another two months).  The sums sought by plaintiffs in relation to the preparation of that motion are relatively modest.  Although the amount could probably be reduced by the court in the exercise of its discretion, a reduction, in any amount, would be neither just nor appropriate.  Plaintiffs are, therefore, awarded reimbursement for those sums.

7

Defendants here claim that:

> The filing and prosecution of the Complaint did not materially alter the relationship of the parties. Plaintiffs achieved no independent success on the merits.  Rather, the fortuity of the Amendment [to the Tax Code] removed the cap on government pension benefits and resulted in payment of benefits in excess of $10,000, beginning with plan years December 31, 1994.

Defendants' memorandum at 11.  Accordingly, defendants assert that plaintiffs are not prevailing parties and, therefore, no award of attorneys' fees is justified.  The court disagrees.

Contrary to defendants' argument, it was they, rather than plaintiffs, who substantially benefitted from the "fortuitous" amendments to the Tax Code.  Plaintiffs have always been entitled to their full pensions.  Those amendments likely cut short this litigation and probably saved defendants substantial legal costs and fees which would have been incurred mounting an unsuccessful defense.  In any event, plaintiffs undeniably prevailed to the extent that they: (1) secured a judicial declaration that the Act, as applied, effected an unconstitutional taking of their vested pension benefits (thereby entitling them, at a minimum, to an award of nominal damages for that intrusion alone); and (2) obtained an award of prejudgment interest on the funds wrongfully withheld by ERS.

8

Defendants knew (or reasonably should have known) that by enforcing the provisions of the Act under the prevailing circumstances, they were unconstitutionally divesting plaintiffs of vested property rights (i.e., pension benefits) without just compensation. And, with regard to prejudgment interest, defendants, as fiduciaries, should have recognized their legal obligation to compensate plaintiffs for the lost value of the monies wrongfully withheld. Defendants failed to appreciate (or deliberately refused to acknowledge) either of the foregoing facts and forced plaintiffs to seek legal representation and, ultimately, judicial intervention, to vindicate rights that defendants should have recognized at the outset. In the end, plaintiffs plainly prevailed and were made whole. Thus, the court concludes that plaintiffs qualify as prevailing parties, and are entitled to an award of reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

II. "Reasonableness" of the Requested Attorneys' Fees.

Having found that an award of attorneys' fees is justified under the statute, the court must now determine whether the sum requested is "reasonable." In this circuit, the preferred method of calculating fee awards under 42 U.S.C. § 1988 is the "lodestar method," by which "the number of hours reasonably expended on the

9

litigation [are] multiplied by a reasonable hourly rate." Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 (1st Cir. 1997)(quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see also In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation, 56 F.3d 295, 305 (1st Cir. 1995). Plaintiffs are also entitled to an award of reasonable attorneys' fees incurred in the preparation of the fee application, and supplemental applications. Brewster v. Dukakis, 3 F.3d 488, 494 (1st Cir. 1993). Of course, whether a request for attorneys' fees is reasonable depends, in part, upon the degree of success obtained. Urban v. Jefferson Cty. School Dist., 89 F.3d 720, 729 (10th Cir. 1996) (citing Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).

Plaintiffs bear the burden of providing sufficiently detailed contemporaneous records of the time spent and tasks performed to allow the court to determine their reasonableness. See Tennessee Gas Pipeline Co. v. 104 Acres of Land, 32 F.3d 632, 634 (1st Cir. 1994). Plaintiffs have met that burden by submitting comprehensive records detailing the effort expended by their legal counsel. They have also filed several affidavits in support of their petition for costs and attorneys' fees.

A.    Alder Pollock & Sheehan.

At the beginning, plaintiffs were represented primarily by Attorneys Edward L. Maggiacomo and David Wollin, of Alder Pollock & Sheehan ("AP&S").  Attorneys Maggiacomo and Wollin did, however, obtain assistance from other attorneys and a paralegal at AP&S.  Records submitted by AP&S document the following:

a.    13.75 hours of work by Attorney Maggiacomo (a partner, customarily billed at $250 per hour);

b.    84.25 hours of work by Attorney Wollin (an associate, customarily billed at $150 per hour);

c.    3.75 hours of work by Attorney Lundsten (a partner customarily billed at $250 per hour);

d.    2 hours of work by Attorney Rocha (a partner customarily billed at $225 per hour);

e.    13.5 hours of work by Attorney Richman (an associate customarily billed at $90 per hour); and

f.    12 hours of work by J.J. Prete (a paralegal customarily billed at $90 per hour).

Accordingly, AP&S has submitted detailed materials supporting its request for attorneys' fees totaling $19,757.50.  In his affidavit, Attorney Maggiacomo states that the sum requested has been voluntarily discounted by $8,448.75, representing the legal fees generated in the course of preparing to respond to

11

defendants' motion to disqualify AP&S.[3]  Additionally, AP&S has submitted documentation supporting its expenditure of $3,829.05 in costs related to this litigation.

Defendants have not challenged the hourly rates charged by any of the attorneys or the paralegal at AP&S.  In the absence of an objection by defendants, and crediting plaintiffs' submissions, the court finds that the hourly rates charged by AP&S for each of the attorneys and the paralegal who worked on this matter are reasonable and consistent with those customarily charged by practitioners of comparable skill and experience in Rhode Island.  See Andrade v. Jamestown Housing Authority, 82 F.3d 1179, 1190 (1st Cir. 1996) ("In determining a reasonable hourly rate, the Supreme Court has recommended that courts use 'the prevailing market rates in the relevant community' as the starting point.").  See also Affidavit of Attorney Maggiacomo at para. 21; Affidavit of Attorney White at para. 17.

After carefully reviewing the submissions by AP&S, the court concludes that the fees charged (and, concomitantly, the number

---

[3]  In the end, AP&S elected not to challenge defendants' motion to disqualify.  Instead, AP&S referred the case to Goldenberg & Muri.  That firm assumed representation of plaintiffs, after which AP&S filed a motion to withdraw.

of hours worked) by AP&S are reasonable and appropriate in light of the complexity of this case, the qualifications of counsel, the volume of work performed by AP&S attorneys and staff, the ultimate resolution of this matter, and the fact that AP&S does not seek compensation for any of the work performed in anticipation of contesting defendants' motion to disqualify. See generally, Hensley, 461 U.S. at 433-37; In re Thirteen Appeals Arising Out of San Juan, 56 F.3d at 305; Grendel's Den, Inc. v. Larkin, 749 F.2d 945 (1st Cir. 1984). Accordingly, pursuant to 42 U.S.C. § 1988, plaintiffs are awarded $23,586.55 in costs and reasonable attorneys' fees expended on their behalf by AP&S at the outset of this litigation.

B.   Goldenberg & Muri.

Plaintiffs have also submitted papers documenting the substantial amount of time and effort spent on this matter by attorneys at Goldenberg & Muri ("G&M"). As compensation for services rendered by G&M, plaintiffs seek an award of $94,687.00 in attorneys' fees and $14,824.95 in costs. Detailed billing records submitted by G&M document the following:

a.   189.65 hours of work by Attorney Barbara Cohen (customarily billed at $180 per hour);

b.   234.70 hours of work by Attorney Anthony Muri (customarily billed at $200 per hour);

13

c.   131.35 hour of work by Attorney Susan Pepin Fay (customarily billed at $100 per hour); and

d.   4.75 hours of work by Attorney Douglas Emanuel (customarily billed at $100 per hour).

As with the materials submitted by AP&S, defendants have interposed no objection to the hourly rates charged by G&M. In the absence of an objection, and crediting plaintiffs' submissions, the court finds that the respective hourly rates charged by G&M for attorneys who worked on this matter are both reasonable and consistent with those customarily charged by attorneys of comparable skill and experience in Rhode Island. See Andrade v. Jamestown Housing Authority, 82 F.3d at 1190. See also Affidavit of Attorney Muri at para. 13; Affidavit of Attorney White at para. 17.

In connection with their representation of plaintiffs in this matter, counsel at G&M provided, among other things, the following legal services:

a.   Prepared for and attended the preliminary injunction hearing;

b.   Responded to discovery requests from defendants;

c.   Prepared and submitted a motion for class certification and supporting papers;

d.   Amended the complaint to add class action allegations and to seek class-wide relief;

14

e. Prepared plaintiffs' motion for summary judgment, supporting memorandum, and accompanying papers;

f. Prepared for and attended the hearing on plaintiffs' motion for summary judgment;

g. Prepared and submitted a supplemental brief in support of plaintiffs' motion for summary judgment, as requested by the court;

h. Prepared and submitted a response to defendants' supplemental memorandum;

i. Prepared and submitted a motion for interim relief; and

j. Prepared and submitted a motion for additional compensation in the form of prejudgment interest.

In his affidavit, Attorney Muri represents that G&M has voluntarily reduced the number of hours for which plaintiffs seek compensation. Among other things, G&M deleted all charges that it considered redundant, duplicative, excessive, or otherwise not properly chargeable to plaintiffs. See Affidavit of Attorney Muri at para. 17-18. Consequently, although attorneys at G&M worked on this matter for approximately 1066 hours (totaling $180,230.00 in legal fees), plaintiffs seek compensation for only 560.45 hours (totaling $94,687.00). Id. In short, G&M has voluntarily reduced its total bill for services by nearly 50 percent.

After carefully reviewing the documentation submitted by G&M, the court concludes that the time spent by attorneys at G&M

15

providing legal counsel in this matter was both reasonable and appropriate. Based upon the comprehensive documentation submitted by counsel for plaintiffs and in light of the complexity of the issues raised, the substantial economic risk assumed by counsel in taking this case, and the ultimate resolution of this matter, the court is persuaded that the fees charged by G&M and the time spent and legal services provided were entirely reasonable and appropriate. See generally, Hensley, 461 U.S. at 433-37; In re Thirteen Appeals Arising Out of San Juan, 56 F.3d at 305. Accordingly, pursuant to 42 U.S.C. § 1988, plaintiffs are awarded $109,511.95 in costs and reasonable attorneys' fees charged by Goldenberg & Muri in connection with this litigation.

III. Defendants' "Motion" for Additional Discovery.

Finally, defendants have requested "some discovery and an opportunity to present evidence on the issue of the reasonableness of the total fees and costs." Defendants' Objection, at 13 n.15. However, the court does not accept footnote 15 as a "motion" for some relief. The Local Rules of the United States District Court for the District of Rhode Island provide that "the movant in every motion . . . shall serve and file with the motion a separate memorandum of law containing the

16

authorities and reasoning supporting his position . . .." Local Rule 12(a). Defendants have failed to comply with that rule.[4]

To the extent that defendants seriously wished the court to consider their request for additional discovery related to plaintiffs' fee request, they should have filed an appropriate motion and supporting memorandum. See, e.g., Petkus v. Chicago Rawhide Manufacturing Co., 763 F.Supp. 357, 359 (N.D. Ill. 1991) ("[S]uch footnote arguments are inappropriate and may be disregarded. If [defendant] wished to rely on this argument it should have raised it in the body of its brief."). Parenthetically, the court notes that the same is true with regard to the arguments defendants raised in footnotes 4, 11, and 12 of their memorandum (concerning the "taking" issue).

In any event, aside from the basic procedural deficiencies of defendants' request for additional discovery, it also lacks any real substance. First, defendants have neglected to point

---

[4] Because this case was referred to a judge in this district due to the recusal of the judges sitting in the District of Rhode Island, the local rules of that court apply. See Local Rules of the United States District Court for the District of New Hampshire, Rule 77.5(a) ("The originating court shall retain jurisdiction over the case and enter final judgment. Local rules of the originating court shall govern the case unless otherwise ordered by the judge who is presiding by designation.").

out any legal authority for the proposition that they are entitled to additional discovery on this issue. More importantly, as a practical matter, it is wholly unclear _why_ they should need any additional discovery. The documentation submitted by plaintiffs in support of their petition for attorneys' fees is traditional, comprehensive, and thorough. Short of deposing plaintiffs' counsel simply to inquire whether the time reported on billing sheets is accurate, it is unclear what further information defendants might possibly need or want in order to formulate a clear and cogent response to plaintiffs' petition for fees. But, even if such information might possibly exist, defendants have failed to identify it, and this court is disinclined to indulge defendants' apparent desire to incur yet even more legal fees.

Having failed to articulate precisely why they might need additional discovery on this matter, defendants present no meaningful argument in support of their request, and the court is unwilling to burden plaintiffs further simply because defense counsel feel disposed to engage in additional litigation. Defendants' request is, therefore, denied.

## Conclusion

Plaintiffs are "prevailing parties," entitled to an award of reasonable costs and fees under 42 U.S.C. § 1988. Accordingly, their motion for an award of attorneys' fees and costs (document no. 25) is granted. Plaintiffs are awarded, and the Retirement Board of the Rhode Island Employees' Retirement System shall pay, the following sums:

a.   $19,757.50 in reasonable attorneys' fees expended by AP&S in connection with this matter;

b.   $3,829.05 in costs reasonably incurred by AP&S in connection with this matter;

c.   $94,687.00 in reasonable attorneys' fees expended by G&M in connection with this matter; and

d.   $14,824.95 in costs reasonably incurred by G&M in connection with this matter.

In light of the foregoing, defendant Nancy Mayer's Objection and Motion to Clarify (document no. 31) is denied as moot.

**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

February 27, 1998

cc:  Barbara S. Cohen, Esq.,
     Michael P. DeFanti, Esq.
     Rebecca Tedford Partington, Esq.
     Clerk, U.S. District Court, RI