USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-1049

 JAMES DESILETS, ET AL.,

 Plaintiffs, Appellees,

 v.

 WAL-MART STORES, INC.,

 Defendant, Appellant.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Shane Devine, Senior U.S. District Judge]

 ____________________

 Before

 Boudin, Circuit Judge,

Keeton and McAuliffe, District Judges.

 _____________________

 E. Tupper Kinder, with whom Nelson, Kinder, Mosseau & Gordon,
P.C. was on brief, for appellant.
 Charles L. Powell, with whom Shillen & Gray, P.A. was on
brief, for appellees.

 ____________________

 March 29, 1999
 ____________________

 McAULIFFE, District Judge. The appellant, Wal-Mart
Stores, Inc., used hidden recording devices to tape its employees'
private conversations. Plaintiffs, four former employees whose
conversations were recorded, sued. Finding that Wal-Mart violated
Title III of the Omnibus Crime Control and Safe Streets Act of 1968
("Act"), 18 U.S.C. 2520, a jury awarded each plaintiff $20,000. 
In addition, the district judge awarded plaintiffs their reasonable
attorneys' fees and costs.
 Since the central issue is one of statutory construction,
we confine the description of what happened to the barest outline. 
The plaintiffs were night-shift employees of a Wal-Mart store
located in Claremont, New Hampshire. On at least several different
days in August 1995,some of their conversations were secretly
recorded on voice-activated tape recorders, and interceptions and
playbacks took place on various days. Without going into detail,
there was enough involvement by store management that Wal-Mart does
not contest its responsibility for what occurred. When the events
were discovered, the present suit was brought, resulting in the
awards just described.
 On appeal Wal-Mart assigns three errors. First it says
the judgment below should have been limited, by operation of the
Act, to $10,000 per plaintiff. Next it argues the trial court
erred by instructing the jury that listening to the recordings
could constitute prohibited "use" of the intercepted conversations
within the meaning of the Act. Finally, Wal-Mart claims that the
attorneys' fees award was excessive in light of plaintiffs' failure
to secure one of the major objectives of their suit punitive
damages.
 DISCUSSION
Statutory Damages
 Section 2520 of Title 18 of the United States Code
creates a civil cause of action entitling any person "whose wire,
oral, or electronic communication is intercepted, disclosed, or
intentionally used in violation of [the Act]" to "recover from the
person or entity which engaged in that violation such relief as may
be appropriate." 18 U.S.C. 2520(a). Appropriate relief for the
violations at issue here can include actual damages, statutory
damages in lieu of actual damages, punitive damages if warranted,
and recovery of reasonable attorneys' fees and costs. 18 U.S.C.
 2520(b).
 In this case plaintiffs claimed no actual damages but
instead sought liquidated statutory damages, punitive damages, and
attorneys' fees. Statutory damages consist of:
 . . . whichever is the greater of $100 a day
 for each day of violation or $10,000.

18 U.S.C. 2520(c)(2)(B).
 The jury awarded each plaintiff $10,000 for Wal-Mart's
violation of the Act in unlawfully intercepting their private
conversations (on fewer than 100 days), and an additional $10,000
for Wal-Mart's violating the Act by intentionally using the
intercepted communications (on fewer than 100 days). Wal-Mart
challenges the total award of $20,000 per plaintiff on grounds that
it represents an impermissible double recovery of the liquidated
damages provided for in Section 2520(c)(2)(B). We agree.
 Appellate review of issues involving statutory
interpretation is de novo. See Matter of MetLife Capital Corp.,
132 F.3d 818, 820 (1st Cir. 1997), cert. denied sub nom. Bunker
Group v. United States, 118 S. Ct. 2367 (1998). Our approach to
statutory construction begins with the actual language of the
provision; we give the text its ordinary meaning. In re Bajgar,
104 F.3d 495, 497 (1st Cir. 1997). When the text's meaning is
plain, courts are obligated to enforce the provision as written. 
United States v. Rivera, 131 F.3d 222, 224 (1st Cir. 1997); see
also Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985);
Caminetti v. United States, 242 U.S. 470, 485 (1917).
 While recognizing that disparate results are revealed in
published decisions, we interpret the language chosen by Congress
to describe recoverable statutory damages, available when no actual
damages are suffered or claimed, as straightforward and clear. 
First, the phrase "$100 a day for each day of violation," plainly
reveals Congress' intent to link liquidated damages not to the
number of discrete violations that might occur on a given day, but
to the number of days on which the Act is violated. So, it is
irrelevant in calculating statutory damages that 100 violations of
the Act might occur on one day, 50 on a second, and only 2 on a
third day. For each day on which any violation occurs, or multiple
violations occur, the liquidated sum of $100 must be paid by the
violator. See, e.g., Shaver v. Shaver, 799 F. Supp. 576 (E.D.N.C.
1992); Spetalieri v. Kavanaugh, No. 96-CV-1650, 1998 WL 901836
(N.D.N.Y. Dec. 22, 1998).
 No doubt the provision anticipates a range of possible
circumstances, extending from one violation on one day to scores of
distinct violations on another day, and even a multitude of days on
which violations occur, perhaps extending over many months. 
Whatever the circumstances, however, if violations occur on 100
days or less, then the minimum statutory award of $10,000 must be
paid. If, on the other hand, violations occur on more than 100
days, then of course the higher statutory award of $100 per day
must be paid.
 Neither the number of discrete violations of the Act
committed by the "person or entity engaged in that violation" on
any one day, nor, in our view, the different types of violations
committed on any one day (interception, or disclosure, or
intentional use), are relevant in calculating the liquidated
damages to be awarded under Section 2520(c)(2)(B). While each type
of violation "amounts to a separate injury prohibited by statute,"
Williams v. Poulos, 11 F.3d 271, 290 (1st Cir. 1993), the statute
makes no apparent distinction among the types of separate injuries
at issue here for purposes of assessing liquidated damages. 
Certainly, each interception separately injures a victim, as does
each disclosure, and each intentional use of intercepted
conversations. But the liquidated damages provision describes only
one inclusive method for calculating damages. So, whether multiple
violations occurring on a particular day involve, say, ten similar
interceptions, or five interceptions and five disclosures, or some
other mix of type or number, the facts pertinent to calculating
statutory damages in lieu of actual damages under Section
2520(c)(2)(B) remain the same: the number of days on which any
violation occurred, and whether that number is equal to or less
than, or greater than, 100.
 The same approach was taken by the Eighth Circuit in Bessv. Bess, 929 F.2d 1332 (8th Cir. 1991). In that case, the
plaintiff sued her estranged husband under the Act for unlawfully
intercepting, disclosing, and using the contents of her private
telephone conversations, which he obtained by attaching a hidden
tape recorder to the basement telephone line in her house. At
trial plaintiff introduced twelve separate tapes of her intercepted
calls. Each tape contained an average of two and one-half
intercepted conversations, and each tape represented one day of
interception. Plaintiff also proved that her estranged husband
intentionally used the content of her intercepted conversations
during their subsequent divorce proceeding. The trial court
awarded $100 for each day on which a violation occurred (on
average, two and one-half distinct interception violations occurred
on each of the twelve days) for a total of $1,200. (The statutory
minimum was $1,000 at the time; it was increased to $10,000 by
Congress in 1986.)
 The Court of Appeals affirmed the award, but only after
increasing it to account for defendant's intentional use of the
intercepted information during the couple's divorce proceeding:
 [Plaintiff] raises one meritorious claim
 with respect to the number of violations. The
 record reveals that on July 24, 1985, during
 the Bess' divorce proceeding, [defendant]
 recited facts obtained from the intercepted
 conversations in an attempt to establish
 marital misconduct by [plaintiff]. This use
 of the intercepted contents represents
 additional prohibited conduct in violation of
 18 U.S.C. 2511. Cf. Rodgers v. Wood, 910
 F.2d 444, 446, 449 n.3 (7th Cir. 1990)
 (plaintiffs sought damages based on disclosure
 of intercepted conversations). We therefore
 determine that [plaintiff] is entitled to an
 additional $100 in statutory damages.1

 1 [Plaintiff] makes no argument that the
 statute entitled her to more than the $100 per
 day figure.

Bess, 929 F.2d at 1334; see also Campiti v. Walonis, 467 F. Supp.
464 (D. Mass. 1979) (double recovery for interception and
disclosure not permitted).
 We are aware of cases in which multiple recovery of the
minimum statutory amount has been allowed, on grounds that the Act
was violated on different days in different ways e.g.,
interception and disclosure. In Menda Biton v. Menda, 812 F. Supp.
283 (D.P.R. 1993), for example, the district court determined that
plaintiff was entitled to recover from defendants $10,000 for the
unlawful recording of his conversations and an additional $10,000
for their disclosure. In the same vein, in Romano v. Terdik, 939
F. Supp. 144, 150 (D. Conn. 1996), a district court observed, in
dicta, that "[i]t is well established that . . . $10,000 may be
awarded for interception and $10,000 may be awarded for disclosure
because they are considered two separate violations of Section
2511." (citations omitted). And, it appears at least implicit in
Rodgers v. Wood, 910 F.2d 444, 446 (7th Cir. 1990), that a district
court may have allowed double recovery of the statutory amount
based on the fact that different types of violations occurred. See
also Dorris v. Absher, 959 F. Supp. 813, 819 n.9 (M.D. Tenn. 1997).
 Menda Biton, and courts expressing similar views, seem to
rely primarily, and we think wrongly, on Bess v. Bess, supra, as
supporting multiple recovery. The Bess court did not hold that
interception and disclosure by the same person warrants multiple
liquidated awards under the Act. If the opinion in Bess supports
any view, it supports a view consistent with our own interpretation
of the damages provision: that the number of days of violation
determines the amount of a liquidated damages award, and not the
number of discrete violations on any given day, nor the different
types of violations that might occur. While the appellant in Bessapparently did not argue that the statute entitled her to more than
an additional $100 for the additional day of violation (disclosure
rather than interception), the Eighth Circuit nevertheless deemed
it appropriate under the statute to award only an additional $100,
and not an additional $1,000 minimum amount, even though the
violation on that additional day was of a different kind.
 The Act does protect different values by prohibiting not
only interception, but intentional use and disclosure of
intercepted conversations as well. And while a plausible argument
can be made that providing separate minimum damage awards for each
type of violation would better serve the Act's purposes, that is an
argument that must be presented to Congress. In deciding this
case, we are satisfied that Congress considered and struck a
balance among important but countervailing policies when it chose
to fix liquidated damages according to the number of days on which
the Act is violated, rather than on some other basis. The statute,
as written, does not explicitly, or implicitly for that matter,
permit recovery of multiple minimum statutory damages awards based
on different types of violation. Had Congress so intended it could
easily have described recoverable liquidated damages differently,
e.g., "for each distinct type of violation (interception,
disclosure, or use), the greater of $100 a day for each day of
violation or $10,000."
 In any event, because we think the text of the statute is
reasonably clear, we cannot graft upon it a remedy that to some
might seem to be good policy, but to others might seem a
disproportionate and burdensome civil sanction for violations that
result in no actual damage. Because we conclude that multiple
recovery of the liquidated damage amount, based on different
violation types, is not available, we need not address Wal-Mart's
argument that merely listening to tapes of unlawfully intercepted
conversations does not constitute an "intentional use" within the
meaning of the Act. See, e.g., Thompson v. Dulaney, 838 F. Supp.
1535, 1547 (D. Utah 1993) (listening to tapes of intercepted
conversations does constitute illegal use.)
 Accordingly, the judgment below must be vacated and the
damages award reduced to $10,000, the statutory minimum, for each
plaintiff.
Attorneys' Fees
 Wal-Mart's remaining contention on appeal is that the
district court erred when it declined to reduce the award of
attorneys' fees and costs to account for plaintiffs' lack of
success in recovering punitive damages. We review a fee award with
deference, reversing only where a mistake of law or abuse of
discretion has occurred. See Coutin v. Young & Rubicam Puerto
Rico, 124 F.3d 331, 336 (1st Cir. 1997). We do, however, require
the trial court to provide an explanation sufficient to permit
appellate review. Id. "The explanation need not be painstaking,
and, sometimes, it may even appear by implication, but at a bare
minimum, the order awarding fees, read against the backdrop of the
record as a whole, must expose the district court's thought process
and show the method and manner underlying its decisional calculus." 
Id. at 337.
 Plaintiffs moved, pursuant to 18 U.S.C. 2520(b)(3) and
N.H. Rev. Stat. 570-A:11(c), for awards of attorneys' fees and
costs, which the trial judge granted (after making modest
adjustments). The court rejected Wal-Mart's request to reduce the
entire fee award by 50% to reflect plaintiffs' unsuccessful
punitive damages claim, or plaintiff Desilets' unsuccessful claim
for constructive discharge, and Wal-Mart objects.
 We have previously recognized that the result obtained in
a lawsuit is a preeminent consideration in the fee-adjustment
process. Coutin, 124 F.3d at 338. We have also noted that the
process is made more difficult when the plaintiff's lack of success
was not in the failure of a severable claim but in the nature of "a
scanty damage award or a shortfall in other relief." Id. In that
regard, we have stated that the failure to recover punitive damages
is not a "failed claim," but a "categor[y] of relief" denied by the
jury. Id. at 340.
 Wal-Mart acknowledges the difference, but nevertheless
urges us not only to treat the unsuccessful punitive damages
request as a failed claim, but to treat it as the only claim. Wal-
Mart says plaintiffs could have recovered the minimum statutory
damages on summary judgment, without the necessity of trial,
because it admitted in its answer that the unlawful interceptions
occurred. So, the argument goes, plaintiffs necessarily proceeded
to trial solely to recover punitive damages. We are not persuaded.
 In its pretrial statement, Wal-Mart declared its position
to be that the employees who taped the conversations were not
authorized to do so, that plaintiffs did not have a reasonable
expectation of privacy in the intercepted conversations, and that
plaintiffs were not entitled to any damages at all. Plaintiffs
proceeded to trial to establish more than their claim for punitive
damages.
 We note that the trial judge seems to have treated the
punitive damages issue as a failed claim, but still declined to
reduce the award, reasoning that:
 the doctrine of interrelatedness, which holds
 that where losing claims include a common core
 of facts or were based on related legal
 theories linking them to the successful claim
 recovery may be had for all claims [citations
 omitted], here serves to require rejection of
 defendant's contention that there should be a
 fifty percent reduction for plaintiffs' lack
 of success on the punitive damage and/or
 constructive discharge claims.

The record supports the district judge's assessment, and his
reasoning is equally pertinent if the lack of success on punitive
damages is more correctly viewed as a category of relief denied,
rather than as a failed claim. Of course "the decision as to how
to separate the wheat from the chaff in a fees contest, within
broad limits, is a matter for the district court's discretion.'" 
Lipsett v. Blanco, 975 F.2d 934, 941 (1st Cir. 1992) (quoting
United States v. Metropolitan Dist. Comm'n, 847 F.2d 12, 17 (1st
Cir. 1988)). We find no abuse of discretion here.
 On remand the judgment shall be amended to reduce the
liquidated damage award to each plaintiff to $10,000. The award of
attorneys' fees and costs is affirmed.
 Affirmed in part, reversed in part and remanded.