RADFORD TRUST, Plaintiff,

v.

**FIRST UNUM LIFE INSURANCE COMPANY OF AMERICA**
**Defendant.**

**No. CIV.A. 02–12477WGY.**

United States District Court,
D. Massachusetts.

Nov. 15, 2005.

---

4

Mark E. Porada, Pierce Atwood, Portland, ME, for First Unum Life Insurance Company of America, Defendant.

Warren H. Pyle, Pyle, Rome & Lichten, & Ehrenberg, P.C., Boston, for John Doe, Radford Trust, Plaintiffs.

Geraldine G. Sanchez, Pierce Atwood, Portland, ME, for First Unum Life Insurance Company of America, Defendant.

*MEMORANDUM & ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

On behalf of its beneficiary, John Doe ("Doe"), the plaintiff Radford Trust ("Rad-ford") brought suit against the defendant First Unum Life Insurance Company Of America ("First Unum"), alleging damages resulting from First Unum's failure to pay long term benefits to Doe pursuant to the terms of an insurance policy First Unum issued to Doe. Compl. [Doc. No. 1] at 1. Radford sought relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, *et seq.* (Count I), and under Massachusetts law, including Mass. Gen. Laws ch. 93A and the doctrine of promissory estoppel (Count II). *Id.* ¶¶ 11–12.

## II. BACKGROUND

### A. Procedural History

On August 25, 2003, First Unum filed a Motion for Summary Judgment and Incorporated Memorandum of Law ("Def.'s Mot. for Summ. J.") [Doc. No. 13]. On September 19, 2003, Radford filed an opposition and a motion for Partial Summary Judgment and supporting memorandum ("Pl.'s Summ. J. Opp'n") [Doc. Nos. 16—17], noting that it had "decided to withdraw its claim under Count II" and was "prepared to execute an appropriate stipulation of dismissal of that claim." *Id.* at 1. On March 31, 2004, this Court granted Radford's motion for partial summary judgment on Count I, noting that "Radford has agreed to withdraw the claim in Count II." Order of 3/31/04 [Doc. No. 38] at 1. The Court explained its March 31, 2004 Order in a comprehensive and detailed Memorandum and Order issued June 14, 2004. *Radford Trust v. First Unum Life Ins. Co. of Am.*, 321 F.Supp.2d 226 (D.Mass.2004).[1]

---

1. The court notes that the referenced Memorandum and Order is cited as having been issued on June 15, 2004, as opposed to June 14, 2004. *Radford Trust*, 321 F.Supp.2d at 226. Because the briefs of the parties refer to this Memorandum and Order as having been issued June 14, 2004, and because the Court's own Case Management and Electronic Case Files ("CM ECF") system notes the date of the Memorandum and Order as June 14, 2004, in the interests of consistency, the Court continues to refer to this Memorandum and Order as having been issued on June 14, 2004.

While the Court has attempted properly to manage and adjudicate this case, motion practice has continued unabated, causing the court some confusion and mis-steps. It is the purpose of this memorandum and order to deal with all pending motions. Here is the current tally:

1. April 14, 2004—Motion for Award of Attorneys Fees for Counsel Warren H. Pyle and Cathy Highet by Radford Trust ("Pl.'s Att'ys Fees Mot. I") [Doc. No. 43];

2. April 26, 2004—Motion for Attorney Fees for John Doe by Radford Trust ("Pl.'s Att'ys Fees Mot. II") [Doc. No. 44];

3. April 28, 2004—Response to Defendant's Submission regarding the Award of Benefits and Motion For First Unum to First Determine the Applicability of the Social Security Offset Provision by Radford Trust ("Pl.'s Offset Mot. & Resp. to Def.'s Submission") [Doc. No. 46];

4. May 12, 2004—Motion to Strike Response to Defendant's Opposition to Plaintiff's Motion for an Award of Attorney's Fees by First Unum Life Insurance Company of America (Def.'s Mot. to Strike) [Doc No. 52];

5. May 19, 2004—Retroactive request for leave to file "Plaintiff's Response to Defendant's Opposition To Plaintiff's Motion For An Award Of Attorney's Fees," ("Pl.'s Att'ys Fees Resp.") [Doc. No. 49], made in "Plaintiff's Opposition to Defendant's Motion to Strike Plaintiff's Response to Defendant's Opposition To Plaintiff's Motion For An Award Of Attorney's Fees," ("Pl.'s Mot. to Strike Opp'n") [Doc. No. 53];

6. May 26, 2004—Motion to Intervene to File Reply to Unum's Opposition to Motion for Attorney Fees for work by John Doe, and, Motion for Leave to request Doe's Additional Attorney Fees for Helping to Prepare this Filing by Bernard Doe ("Pl.'s Mot. to Intervene & Req. Add'l Att'ys Fees") [Doc. No. 54].

This Court's Order of June 14, 2004 amended its March 31, 2004 Judgement and Order by: (1) holding that prejudgment interest should run from June 13, 2000; and (2) stating that the Court would issue an Amended Judgment clarifying the appropriate calculation of pre-judgment interest. *Radford Trust,* 321 F.Supp.2d at 253, 260. On July 14, 2004, First Unum filed a Notice of Appeal as to the March 31, 2004 order and judgement. [Doc. No. 58].

7. July 16, 2004—Motion to Amend Memorandum & Order, of June 14, 2004 and Motion to Supplement the Administrative Record by Radford Trust ("Pl.'s Mot. to Amend 7/14/04 Order & Supple. Admin. R.") [Doc. No. 59];

8. September 3, 2004—Motion to Award Damages Under State Law by Radford Trust ("Pl.'s State Damages Mot.") [Doc. No. 70].

In light of the appeal, all unresolved motions previously filed with the Court were denied as moot on January 19, 2005. This was error, however; indeed it was inexcusable since, on December 21, 2004 this Court received a Mandate of the First Circuit dismissing the appeal after granting of First Unum's motion for voluntary dismissal. ("1st Cir. Mandate") [Doc. No. 73]. This Court's mis-step promptly brought the filing of two more motions, seeking to induce action at this level:

9. January 26, 2005—Motion for Reconsideration of Order Denying Motions as Moot by Radford Trust ("Pl.'s Mot. for Recons.") [Doc. No. 74];

10. February 10, 2005—Motion for Declaration that First Unum has Repudiated the Court's Judgment and its Administrative Responsibilities Under the Insurance Policy so as to Entitle Plaintiff to Sue Immediately for Benefits Be-

yond the Twenty–Four Month Period by Radford Trust ("Pl.'s Mot. for Decl.") [Doc. No. 75].

This Memorandum will address each pending motion and then clarify the calculation of prejudgment interest and damages to be made by First Unum.

## III. DISCUSSION

### A. The Motion for Attorney Fees for Counsel Warren H. Pyle and Cathy Highet by Radford Trust is ALLOWED

#### 1. Attorney's fees are warranted

ERISA provides that in "any action ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1); *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 225 (1st Cir.1996)("fee awards under ERISA are wholly discretionary"). The First Circuit has developed a five factor standard for determining whether an assessment of attorney's fees is appropriate in an ERISA case. *Cottrill*, 100 F.3d at 225. The five factors to consider are: (1) the degree of bad faith or culpability of the losing party; (2) the ability of such party personally to satisfy an award of fees; (3) whether such award would deter other persons acting under similar circumstances; (4) the amount of benefit to the action as conferred on the members of the pension plan; and (5) the relative merits of the parties' positions. *Id.* An appellate court reviews the grant or denial of prejudgment interest in ERISA cases solely for abuse of discretion. *Id.* at 223.

■ While First Unum contends that "the record contains no indication that the defendants exhibited bad faith," Def.'s Opp'n to Pl.'s Mot. for an Award of Att'ys Fees ("Def.'s Att'ys Fees Opp'n") [Doc. No. 47] at 2 (internal quotations and cita-

tion omitted), this Court found that the record indicated otherwise.

First Unum's conduct in denying Doe's claim was entirely inconsistent with the company's public responsibilities and with its obligations under the Policy. This is not the first time that First Unum has sought to avoid its contractual responsibilities, and an examination of cases involving First Unum and Unum Life Insurance Company of America, which like First Unum is an insuring subsidiary of Unum Provident Corporation, reveals a disturbing pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics. These cases suggest that segments that have run in recent years on "60 Minutes" and "Dateline," alleging that Unum Provident "regularly declines disability claims as a way of boosting profits," may have been accurate.

*Radford Trust*, 321 F.Supp.2d at 247–49 (footnotes omitted). Accordingly, the Court stated "[a]s this Court has described, First Unum acted in bad faith in denying benefits to Doe, and while First Unum's position was entirely without merit, Radford's was essentially correct." *Id.* at 259.

This Court went on to conclude that First Unum could "well afford to pay a fee award, [ ] the awarding of fees against insurers acting in bad faith would deter similar conduct by other insurers in the future," and that "participants and beneficiaries in other plans, particularly those administered by First Unum, will tend to benefit in a similar manner from this lawsuit." *Id.*

Having already held that attorney's fees were appropriate, this Court ordered the parties to submit papers regarding the appropriate amount of attorney's fees. *Id.* First Unum's contention that Radford "has

offered no analysis or explanation for why it should be entitled to an award of attorney's fees" is therefore without merit, *see* Def.'s Att'ys Fees Opp'n at 1; this Court only requested Radford submit papers regarding the appropriate amount. First Unum has made no arguments not already considered by this Court. Thus, in keeping with this Court's earlier determination, the Court now reaffirms that granting attorney's fees to Radford in the case at hand is appropriate.

### 2. Determination of Attorney's Fees

Radford has requested attorney's fees in the amount of $30,747.10. Pl.'s Att'ys Fees Resp., Ex. 3 at 8. First Unum has argued that the requested fee amount is excessive and the Court should award no more than $14,550. Def.'s Att'y Fees Opp'n at 12.

ERISA provides for damages which include attorney's fees and costs. 29 U.S.C. § 1132(g)(2); *Massachusetts Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, No. 95–10491, 1997 U.S. Dist. LEXIS 22233, at *35 (D.Mass. Sept. 30, 1997) (Woodlock, J.) (unpublished opinion) *aff'd*, 139 F.3d 304 (1st Cir.1998). The First Circuit has stated that where the relevant statute does not provide an alternate method for calculating reasonable attorney's fees, as is the case with the ERISA statute, the "lodestar" method should be used. *Tennessee Gas Pipeline Co. v. 104 Acres of Land*, 32 F.3d 632, 634 (1st Cir.1994); *Hedley–Whyte v. Unum Life Ins. Co.*, No. 94–11731, 1996 WL 208492, *3, 1996 U.S. Dist. LEXIS 5880, at *10 (D.Mass. Mar. 6, 1996) (O'Toole, J.) (unpublished opinion) (applying lodestar method to calculate attorneys' fees under 29 U.S.C. § 1132(g)) (. "A court arrives at the lodestar by determining the number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305

(1st Cir.1995); *Mogilevsky v. Bally Total Fitness Corp.*, 311 F.Supp.2d 212, 216 (D.Mass.2004); *Martino v. Massachusetts Bay Transp. Auth.*, 230 F.Supp.2d 195, 201 (D.Mass.2002).

Once the appropriate hourly rate and number of hours reasonably expended are determined, the lodestar calculation will yield a presumptively correct result and "additional tinkering merely serves to double count some factors." *System Mgmt. Inc., v. Loiselle*, 154 F.Supp.2d 195, 209 (D.Mass.2001). There is a "strong presumption," however, that the lodestar figure reflects a reasonable assessment of the fees to be awarded. *Id.* at 204. Finally, the court is to determine the reasonable and necessary costs to be awarded. *See id.* at 204, 210–11.

#### a. Reasonable Hours Expended

In calculating the lodestar estimate, only hours that were "reasonably expended on the litigation" ought be included. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Under the framework of *Hensley*, a court may reduce the number of hours asserted by the prevailing party if documentation is inadequate, or if effort put forth was "excessive, redundant, or otherwise unnecessary." *Id.* at 433–34, 103 S.Ct. 1933; *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir.1984) (stating that "hours which were duplicative, unproductive, excessive, or otherwise unnecessary" should be subtracted from the number of hours actually invested). The First Circuit requires that the prevailing party submit "detailed contemporaneous time records," the absence of which "will call for a substantial reduction in any award or, in egregious cases, disallowance." *Grendel's Den*, 749 F.2d at 952; *Denny v. Westfield State Coll.*, Civ. A. Nos. 78–2235–F, 78–3068–F, 1989 WL 112823, at *3 (D.Mass. May 12, 1989)

(Freedman, C.J.) *aff'd,* 880 F.2d 1465 (1st Cir.1989).

Radford has submitted records of hours spent by two attorneys: lead counsel Attorney Warren H. Pyle, ("Pyle"), a partner in the law firm of Pyle, Rome, Litchen, Ehrenberg & Liss–Riordan, P.C., and Cathy Highet ("Highet"), an associate in the same firm. Pl.'s Att'ys Fees Mot. I, Exs. A & B; Pl's Att'ys Fees Resp., Exs. 1 & 2. The documents assert that Pyle worked a total of 90.6 hours and Highet a total of 20.4 hours.[2] Pl's Att'ys Fees Resp., Ex. 3. First Unum contends that Radford: (1) has submitted 4.1 hours for pre-litigation work not allowed under the ERISA framework; (2) did not sufficiently document Highet's time or experience; (3) submitted an invoice which contains vague entries not providing adequate explanation of the exact nature of the time spent; and (4) has submitted charges that should be considered excessive for the work performed. Def.'s Att'ys Fees Opp'n, at 6–9.

### (1) 4.1 hours of pre-litigation work

■ First Unum asks this Court to strike 4.1 hours of time as "pre-litigation" fees not permissible under ERISA. *Id.* at 6. "Under ERISA, this court may award fees and costs 'in any action' brought pursuant to the statute. Courts have read this provision as applying to court actions only, and not administrative proceedings . . . ." *Doe v. Raytheon,* No. 00–12545, 2002 WL 1608279, *2, 2002 U.S. Dist. LEXIS 13222, at *6 (D.Mass. Jul. 19, 2002) (Zobel, J.), (citing *Choi v. Massachusetts Gen'l Physicians Org., Inc.,* 66 F.Supp.2d 251, 255 (D.Mass.1999) (Lasker, J.)). Expanding on this proposition, First Unum argues that "a prevailing plaintiff is not entitled to recover legal fees for work performed prior to the preparation and filing of the

Complaint, such as work during the administrative process." Def.'s Att'ys Fees Opp'n at 6. First Unum thus concludes that the 4.1 hours of work spent by Pyle prior to filing the Complaint in December 2002 were for administrative proceedings and ought be disallowed. *Id.*

The invoice and explanation of time submitted by Pyle however, indicates otherwise. Pyle attests that the work he performed before the preparation of the Complaint did not include any participation in the administrative process. Pl's Att'ys Fees Resp., Ex. 1 ¶ 2. Indeed, a review of the details and entries of time spent prior to December 2002 reveals conversations, correspondence, and interviews with the client, reviews of file materials, and a review of the draft of the Complaint. Pl's Att'ys Fees Resp., Ex. 3. These entries are consistent with the preparation of the Complaint and are allowed. *See Doe,* 2002 WL 1608279, *2, 2002 U.S. Dist. LEXIS 13222, at *6 (noting that plaintiff is entitled to attorney's fees and costs for the work performed in preparing a complaint). Furthermore, this Court finds the expenditure of 4.1 hours for these activities to be reasonable.

### (2) 20.4 hours of Highet's time

■ First Unum also asks the Court to strike 20.4 hours from the calculation of attorney's fees because Radford denoted the time spent by Highet only with a "CH" and did not originally describe her duties, her level of experience, or offer any justification of her requested hourly rate. Def.'s Att'ys Fees Opp'n at 6–7. As a matter within its discretion, the Court has allowed Radford's retroactive request for leave to file its response to First Unum's Opposition to Radford's Motion for an award of

---

**2.** A careful review of the records submitted detailing the hours expended, reveals that the total hours documented by Pyle is 91.0, not 90.6 as asserted by Radford. This Court will use the uncontested 90.6 hour figure submitted by Radford.

attorney's fees ("Pl's Att'ys Fees Resp."). *See* section D, *infra.* Radford's permitted response contained, *inter alia,* an affidavit by Highet attesting to her level of experience and her role within the case at hand. Pl's Att'ys Fees Resp., Ex. 2. The exact details of how her time was spent on the case is specified within the invoice. *See* Pl's Att'ys Fees Resp., Ex. 3. Additional affidavits submitted lend support to her requested hourly rate. *See* Pl's Att'ys Fees Resp., Exs. 1A–1C.

Two time entries of Highet's cannot reasonably be assigned as attorney's fees in this case. On September 29 and 30, 2003 Highet performed 0.7 hours of research concerning "mental vs. physical disabilities." Pl's Att'ys Fees Resp., Ex. 3. In its March 31, 2004 Order, this Court concluded that "[a]ny determination as to whether Doe's disability is a 'mental' one or a 'physical' one for purposes of continuing receipt of benefits under the Policy is for First Unum, rather than this Court, to make in the first instance." Mem. & Order of 3/31/04 at 2. As this determination is for First Unum to make and Radford did not succeed in persuading the Court to make this determination, the Court will not award attorney's fees to Radford in conjunction with this research. In sum, this Court concludes that Radford may recover for 19.7 of the 20.4 hours of work performed by Highet.

### (3) Vague and undefined time entries

■ First Unum complains generally that Radford "also has included several additional vague and undefined time entries . . . that provide inadequate information . . . ." Def.'s Att'ys Fees Opp'n at 7. After a review of these records, the Court finds that the entries of billing hours are sufficient to satisfy the heightened standard of detail required under *Grendel's Den.* 749 F.2d at 952 (noting that in cases involving fee applications, the absence of detailed contemporaneous records will call for a substantial reduction or disallowance of any award). The vast majority of Pyle's entries detail the exact nature of the task undertaken, and all entries properly account for the exact time expended and the date of the documented work. *See* Pl's Att'ys Fees Resp., Ex. 3. Entries documenting phone calls to the client or drafting of letters require no more explanation to meet the standard. *See Parker v. Town of Swansea,* 310 F.Supp.2d 376, 392 (D.Mass.2004) (Dein, M.J.) (stating that entries documenting phone calls with the plaintiff and his father "require no further details to be compensable"). Based on this review, the Court finds that the records kept and submitted were contemporaneous and offered adequate detail so that the Court could offer meaningful review of the reasonableness of the time expended.

### (4) Reasonableness of time spent

■ Finally, First Unum notes that Attorney Pyle claims to have spent eighteen hours "preparing Plaintiff's motion for summary judgment . . . in spite of the fact that Plaintiff agreed to voluntarily drop its Chapter 93A claim and devoted its brief exclusively to the ERISA question." Def.'s Att'ys Fees Opp'n at 7–8. First Unum argues that eighteen hours "is excessive and should be reduced by [eight] hours." *Id.* at 8. Pyle asserts that within the hours referenced by First Unum, he spent no time on the Chapter 93A claim, implying that all eighteen hours complained of were dedicated solely to the ERISA claim. *See* Pl's Att'ys Rees Resp., Ex. 1 ¶ 4.

This Court does not consider eighteen hours spent in the preparation of a successful motion for summary judgment to be excessive. *Cf. Horney v. Westfield Gage Co.,* 227 F.Supp.2d 209, 216 (D.Mass. 2002) (Neiman, M.J.) (reducing attorney's fees by 30% where attorney spent eighty-

four hours to research and draft an opposition to Defendants' summary judgment motions and ninety-one hours to research and draft an opposition to Defendants' post trial motions); *United States v. Metropolitan Dist. Comm'n,* No. 85–0489, 1987 U.S. Dist. LEXIS 4578, at *12 (D.Mass. Apr. 24, 1987) (Mazzone, J.) (unpublished opinion) (concluding that "no more than 80 hours of the 245.80 hours claimed can be reasonabl[y] attributed to the initial task of preparing and briefing the motion" for partial summary judgment). The eleven-page memorandum in support of partial summary judgment and in opposition of Defendant's motion for summary judgment focused upon the facts surrounding the denial of benefits to Doe and successfully persuaded the Court to grant partial summary judgment on the ERISA claim. Pl.'s Summ. J. Opp'n at 6–8. The memorandum noted that a district court in Virginia had previously found the defense First Unum employed in the case at hand to be untenable. *Id.* at 8 (citing *Hines v. Unum Life Ins. Co. of Am.,* 110 F.Supp.2d 458 (W.D.Va.2000)). While the issues were only moderately complex and persuasive precedent had already been developed, Pyle's memorandum was cogent, well organized, effective, and made good use of the factual record before the Court. *See id.; Cf. Grendel's Den,* 749 F.2d at 953–954 (finding fifty-five hours spent preparing seventeen-page brief involving single issue excessive while finding sixteen hours to write thirty-seven page brief reasonable); *Bailey v. Dart Container Corp. of Michi-*

*gan,* 980 F.Supp. 584, 595 (D.Mass.1997) (Bowler, M.J.) (finding memorandum well-drafted but nevertheless holding an attorney's efforts to dismiss the case on procedural as opposed to substantive grounds to be excessive). In conclusion, the Court finds that no adjustment of the lodestar is warranted for the eighteen hours spent working upon the motion for summary judgment between the 17th and 19th of September 2003.

■ First Unum also claims that 12.4 hours spent preparing a reply brief that it alleges was never filed is also excessive Def.'s Att'ys Fees Opp'n at 8 (referring to Pl.'s Att'ys Fees Mot. I, Ex. B). Radford, however, responds that the 12.4 hours represent time spent on documents that were in fact filed with the Court in pursuit of their successful motion for summary judgment. *See* Pl's Att'ys Fees Resp., Ex. 1 ¶ 4. Specifically, Radford asserts that the 12.4 hours correspond to time spent on: (1) a motion to supplement the record [Doc. No. 24]; (2) a response concerning the statement of material facts [Doc. No. 29]; and (3) a supplemental memorandum in support of partial summary judgment [Doc. No. 28].[3] Pl's Att'ys Fees Resp., Ex. 1 ¶ 4. In support of this assertion, Pyle's invoice distributes the 12.4 hours as follows:

> 10/15/03 (2.5 hours)—Work on response to defendant's response to plaintiff's statement of material facts and a supplemental memorandum in response

---

3. Pyle also asserts that part of the 12.4 hours was spent in preparation of the motions to impound the insured's name. Pl's Att'ys Fees Resp., Ex. 1 ¶ 4 (referring to Pl.'s Mot. to Impound Insured's Name [Doc. No. 25] and Pl.'s Further Mot. to Impound Papers and to Substitute the Name of John Doe for that of the Insured in any Decision or Op. of the Ct. [Doc. No. 26]). The Court notes that, although filed with the Court on October 21,

2003, as per Pyle's own invoice, the actual work done for the motion to impound was performed on September 30, 2003 and not between October 15 and 21 of 2003. Pl's Att'ys Fees Resp., Ex. 3. Thus, the motions to impound the insured's name will not be considered in the Court's determination of the reasonableness of the 12.4 hours asserted by Pyle.

to Unum's opposition to motion for partial summary judgment

10/16/03 (2.5 hours)—Work on Reply Memorandum re Motion for Summary Judgment

10/20/03 (7.0 hours)—Work on Reply Memorandum, Response to Counter-Statement of facts; Telephone call with Attorney Porada

10/21/03 (0.4 hours)—Further work on Reply Memorandum, Response to Counter-Statement of facts; Telephone call with Clerk's office

Pl's Att'ys Fees Resp., Ex. 3 at 5.

12.4 hours spent in the preparation of a brief motion to supplement the record, a two-page response concerning the statement of undisputed facts, and a ten-page reply memorandum in pursuit of a successful motion for partial summary judgment is not clearly excessive. *See* Order and Judgment of 3/31/04; *see, e.g., Bailey,* 980 F.Supp. at 595 (reducing 29.75 hours of time spent conferring, reviewing pleadings and background information and researching, drafting and revising memorandum and reply brief to 16.5 hours). Again, while the issues were not overly complex, Pyle filed these documents with the Court in effective support of the successful motion for summary judgment and, specifically concerning the reply memorandum, made adept use of the factual record. *See* Order of 3/31/04. In conclusion, the Court finds that no adjustment of the lodestar is warranted for the 12.4 hours spent preparing the motion to supplement the record, the response concerning the statement of undisputed facts, and the ten-page reply

4. Upon careful consideration of the record, the Court notes that all the time entries to which First Unum objects pertain generally to the documents filed in pursuit of Radford's successful motion for summary judgment. Pyle's efforts drafting Radford's successful motion for summary judgment and reply brief equal 35.3 hours and Highet's equal 9.0 hours for a combined total of 44.3 hours. *See* Pl's

memorandum between the 15th and 21st of October, 2003.[4]

In sum, the Court finds that 90.6 hours for attorney Pyle and 19.7 hours for attorney Highet are reasonable in pursuit of their successful motion for summary judgment.

**b. Reasonable Hourly Rates**

■■■■■ After the reasonable time expended has been determined, the lodestar calculation requires the Court to multiply the number of hours by a reasonable hourly rate. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. In determining the reasonable hourly rate, this Court must find "the prevailing hourly rate in Boston for attorneys of comparable skill, experience, and reputation." *Martino,* 230 F.Supp.2d at 205; *see Blum v. Stenson,* 465 U.S. 886, 895–96, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The burden is on Radford to provide this Court with affidavits and other forms of evidence that: "(1) establish [its] lawyer['s] skills and experience, and (2) inform the Court of the prevailing market rate in the community for attorneys with such qualifications." *Martino,* 230 F.Supp.2d at 205; *see Blum,* 465 U.S. at 895–96, 104 S.Ct. 1541.

Radford requests an hourly rate of $300 for Pyle as lead counsel and $175 for Highet as assisting counsel. Pl.'s Att'ys Fees Resp., Ex. 1 ¶¶ 3,5; Ex. 2 ¶ 3. In support of these requested rates, both Pyle and Highet have submitted their own affidavits detailing their individual experience as lawyers. Pl.'s Att'ys Fees Resp.,

Att'ys Fees Resp., Ex. 3 at 4–7 (noting work performed in support of summary judgment on sporadic dates from Aug. 25, 2003 until Mar. 31, 2004). First Unum does not argue that 44.3 hours spent drafting and preparing briefs and memoranda in pursuit of Radford's successful motion for partial summary judgment on the merits to be excessive and this Court makes no finding to that effect.

Ex. 2; Pl.'s Att'ys Fees Mot. I, Ex. A. In further support of these requested rates, the affidavits of other Boston area attorneys attesting to their hourly rates are also submitted. Pl.'s Att'ys Fees Resp., Exs. 1A–1C.

In response, First Unum argues that the rates requested are not in accord with recent rates awarded by the Federal District Court of Massachusetts. Def.'s Att'ys Fees Opp'n at 8–9. First Unum cites cases in which the hourly rate awarded is below the $300 hourly rate requested by Pyle.[5] *Id.* Here, having considered the experience of Pyle and Highet, the complexity of the issues in the case at hand, and the Court's knowledge of the prevailing market rates for attorneys and legal assistants with comparable backgrounds, the Court finds that $250.00/hour and $125.00/hour are reasonable hourly rates for attorney's Pyle and Highet respectively.[6]

### (1) Attorney Warren H. Pyle

▮ Pyle's affidavit demonstrates that he has had a long career as a labor and employment law attorney in the Boston area. Pyle has practiced labor and employment law since graduating from Harvard Law School in 1958. Pl.'s Att'ys Fees Mot. I, Ex. A ¶¶ 1–2. Pyle is also a chapter editor of a labor law treatise entitled *The Developing Labor Law,* and has "presented papers on a variety of labor and employment law topics at national convocations of labor lawyers for the past thirty years." *Id.* ¶ 3. Pyle is admitted to practice before the United States Supreme Court, the United States Court Of Appeals for the First Circuit, and the courts of the Commonwealth of Massachusetts. *Id.* ¶ 1.

In support of Pyle's assertion that a $300 hourly rate is commensurate with that paid to other Boston area attorneys in labor and employment law litigation cases, Pyle submitted an affidavit citing two cases in which attorney's fees were assigned to Pyle's law partners in the amounts of $300 and $320 per hour. Pl's Att'ys Fees Resp., Ex. 1 ¶ 5 (indicating that a $300 hourly rate was awarded to attorneys in *Dahill v. Boston Police Dep't,* SJC 08324 (Marshall, C.J.)); *Sprague v. United Airlines, Inc.,* No. 97–12102, 2002 WL 1803733, 2002 U.S. Dist. LEXIS 14519 (D.Mass. Aug. 7, 2002) (O'Toole, J.) (unpublished opinion) (awarding $320 hourly rate). Pyle also notes the case of *Doe v. Raytheon,* in which Judge Zobel approved an award of $300 per hour to the lead counsel, 2002 WL 1608279, **1–2, 2002 U.S. Dist. LEXIS 13222 at *2–3, *6. *See* Pl's Att'ys Fees Resp., Ex. 1 ¶ 5.

In addition, Radford proffers the affidavits of Arthur G. Telegen, Esq. ("Telegen"), Joan A. Lukey, Esq.("Lukey"), and Harvey A. Schwartz, Esq. ("Schwartz"). Pl's Att'ys Fees Resp., Exs. 1A–1C. In 2002, Telegen, a partner in the firm of Foley, Hoag & Eliot, L.L.P. in Boston, Massachusetts and the chair of the firm's labor and employment department, stated that the market rate charged for his time is $525 per hour. Pl's Att'ys Fees Resp., Ex. 1A ¶ 2. At that time, Telegen had 27

---

**5.** This Court notes that First Unum objected to the lack of documentation provided concerning Highet, and subsequently did not object to Radford's proposed hourly rate of $175 for her work. While not explicitly argued by First Unum, this Court will substantiate the rate requested by Radford for Highet, or reduce it accordingly.

**6.** While the Court details its reasoning below, it notes that the repetitive analysis of what is a largely constant body of case law is an unproductive use of judicial resources. It has come to the Court's attention that the United States District Court for the District of Columbia has adopted a court-wide formula for the assessment of attorneys' fees. Such an approach, if fair and balanced, could serve bench and bar alike.

years of experience. *Id.* ¶ 2. In 1993, Lukey, then a senior litigation partner at Hale & Dorr in Boston, Massachusetts and chair of her firm's Employment and Discrimination Practice Group, stated that her billable rate was $300 per hour. Pl's Att'ys Fees Resp., Ex. 1B ¶¶ 2, 3, 5. Lukey also makes reference to Kevin Powers, Esq. ("Powers"), noting that in 1993, experienced plaintiff-side litigation attorneys charged hourly rates ranging between $280 and $300 per hour. *Id.* ¶¶ 5–6. In his affidavit, Schwartz states that in *Lopes v. Town of Mattapoisett, Mass.*, No. 00–11970–WGY (D.Mass.2002), he was awarded attorney's fees at the rate of $330 per hour. Pl's Att'ys Fees Resp., Ex. 1C.

First Unum contends that $300 is too high and proposes no more than $250 as a reasonable hourly rate. Def.'s Att'y Fees Opp'n at 9. First Unum cites numerous cases in which courts have awarded hourly rates of approximately $250 for Boston civil rights attorneys with many years of experience. *Id.* at 8–9 (citing, *inter alia, Wilson v. McClure*, 135 F.Supp.2d 66, 71 (D.Mass.2001)) (awarding $250 hourly rate to Harvey Schwartz, Esq., who the court recognized as a highly skilled and prominent Boston civil rights attorney); *Alfonso v. Aufiero*, 66 F. Supp 2d 183, 197 (D.Mass.1999) (Saris, J.) (holding that $250 is a typical hourly rate for a senior civil rights trial attorney).

This Court rules that $250 is a reasonable hourly rate for an attorney of Pyle's experience, skill, and tenure before the bar.

### (2) Attorney Cathy Highet

 As noted previously, Highet is an associate working for the firm of Pyle, Rome, Lichten, & Ehrenberg and has been employed by Pyle's firm since May of that 2003. Pl's Att'ys Fees Resp., Ex. 2 ¶ 2. Highet graduated in 2003 from Boalt Hall School of Law, University of California,

Berkeley. *Id.* ¶¶ 1. Highet specializes in labor and employment law. *Id.* ¶ 2.

In support of Highet's assertion that a $175 hourly rate is commensurate with that paid to other Boston area attorneys in labor and employment law litigation cases, Radford refers to the affidavits of Telegen and Schwartz. Pl's Att'ys Fees Resp., Exs. 1A, 1C. In 2002, Telegen stated that the market hourly rate charged for William J. Brennan ("Brennan"), an associate at Foley, Hoag, & Eliot, L.L.P., was $215. Pl's Att'ys Fees Resp., Ex. 1A ¶¶ 2–3. At that time, Brennan had been an associate at Foley, Hoag & Eliot L.L.P. for approximately two years, although it is not clear how many years of total experience Brennan had at that time. *See id.* ¶ 2. The Schwartz affidavit states that in 1994 he was assisted by Kimberly Scheckner, an associate with seven years of experience and whose billable hourly rate is asserted to have been $190. Pl's Att'ys Fees Resp., Ex. 1C at 2, 4–5.

In researching the appropriate hourly rates of associate attorneys, this Court has found that Highet's requested rate of $175 is too high. Highet's work consisted primarily of research and the drafting of the reply to First Unum's motion for summary judgment, both important tasks to Radford's claim. The reduction of the requested rate from $175 to $125 is warranted, however, given Highet's years of experience at the time of the work performed (less than 1 year). Moreover, $125 per hour is reasonable and appropriate in considering the prevailing market rates for assistant counsel in the Boston area. *See McDonough v. City of Quincy*, 353 F.Supp.2d 179, 188 (D.Mass.2005) (holding $150 hourly rate reasonable where associate counsel had 9 years of unconcentrated emphasis in labor and employment law); *Dash v. Chicago Ins. Co.*, No. 00–11911, 2004 WL 1932760, *10, n. 25, 2004 U.S.

Dist. LEXIS 17309, at *38 n. 25 (D.Mass. Aug. 23, 2004) (Woodlock, J.) (unpublished opinion) (noting that the parties in the case agreed that associate pay ranged between $130–170/hour which contrasted with Gadsby & Hannah, L.L.P., which charged hourly rates for associates of $150–220); *Martino*, 230 F.Supp.2d at 206 (holding $175 hourly rate reasonable for a labor and employment attorney with 19 years of experience); *Wilson*, 135 F.Supp.2d at 72 (ruling that a third year associate's rate should be $120/hour); *Alfonso*, 66 F.Supp.2d at 197 (awarding hourly rate of $130 to associate); *Guckenberger v. Boston Univ.*, 8 F.Supp.2d 91, 108 (D.Mass.1998) (Saris, J.) (approving hourly rate of $140 for junior attorney's core legal work); *Murray v. Shaw Indus., Inc.*, 990 F.Supp. 46, 48 (D.Mass.1997) (approving hourly rate of $125 to $140 for associate counsel); *Clifton v. Massachusetts Bay Transp. Auth.*, No. 95–2686, 2000 WL 218397, *17, 2000 Mass.Super. LEXIS 22, at *49 (Feb. 3, 2000) (Gants, J.) (awarding an hourly rate of $175.00 to an attorney who handled much of the discovery and research and awarding an hourly rate of $125.00 to an attorney who organized trial materials and performed some legal research).

In sum, the reasonable hourly rates to be used for attorneys Pyle and Highet in the lodestar calculation are found to be $250 and $125, respectively.

### c. Adjusting the lodestar

█ "Once established, the lodestar represents a presumptively reasonable fee, although it is subject to upward or downward adjustment in certain circumstances." *Parker v. Town of Swansea*, 310 F.Supp.2d 376, 398 (D.Mass.2004) (Dein, M.J.) (quoting *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir.1992)). While "the trial court retains the authority to adjust the lodestar ... it must do so in accordance with accepted principles." *Coutin v.*

*Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 337 (1st Cir.1997). It is generally recognized that "[i]f a plaintiff prevails on only some of multiple claims, then a fee reduction may be in order." *Id.* at 339; *Alfonso*, 66 F.Supp.2d at 198 (noting that where "multiple claims are interrelated and a plaintiff has achieved only limited success, awarding her the entire lodestar amount would ordinarily be excessive"). To the extent that claims are not interrelated, i.e., where they "rest on different facts and legal theories—they are by definition severable and unrelated" and time spent in connection with unsuccessful, severable claims should be eliminated. *Coutin*, 124 F.3d at 339. "The guiding principle ... is that a court should award only that amount of fees that is reasonable in relation to the results obtained at trial." *Alfonso*, 66 F.Supp.2d at 198 (internal quotation marks omitted).

█ Analysis of the "results obtained" is a "preeminent consideration in the fee-adjustment process." *Coutin*, 124 F.3d at 338. In *Coutin*, the First Circuit explained that the meaning of "results obtained" includes: (1) "a plaintiff's success claim by claim;" (2) "the relief actually achieved;" and (3) "the societal importance of the right which has been vindicated." *Id.; Mogilevsky*, 311 F.Supp.2d at 221. Applying these principles to the case at hand does not warrant a reduction in the lodestar amount.

█ The "claim by claim" factor does not militate in favor of reducing the fee. This inquiry "focuses on the number of substantive causes of action on which a plaintiff prevailed. If a plaintiff prevails on only some of multiple claims, then a fee reduction may be in order." *Alfonso*, 66 F.Supp.2d at 198 (internal quotation marks and citation omitted). Here, only two claims were brought and one of those claims, for damages under Mass. Gen.

Laws ch. 93A, was voluntarily dismissed. This was not a case, however, where Radford consumed numerous and excessive hours in pursuit of this dismissed claim. In fact, Pyle asserts that he "did little work" on the Chapter 93A claim and that he "ha[s] not requested fees" for it. Pl.'s Att'ys Fees Resp., Ex. 1 ¶ 4. The fact that Radford voluntarily dismissed one claim against First Unum and succeeded on the only claim pursued, indicates that no reduction is appropriate. *Cf. Parker*, 310 F.Supp.2d at 398–99 (indicating a reduction was appropriate where plaintiff only succeeded on 2 of 14 claims).

The amount of the award was not insubstantial, totaling over $100,000.00 as of April 13, 2004. *See* Def.'s Submission Regarding the Award of Benefits ("Def.'s Benefits Submission") [Doc. No. 40] at 4. The relief actually achieved does not militate for or against a modification of the lodestar amount. *See Parker*, 310 F.Supp.2d at 399 (finding no adjustment to the lodestar appropriate where the actual award was not insignificant though short of what plaintiff was seeking).

Finally, the verdict in this case is of public significance given the importance attributed by Congress to the goals of ERISA policy, *see* 29 U.S.C. § 1001, and in curbing further flagrant denials and patently unreasonable interpretations of their own policies by First Unum. *See Radford Trust*, 321 F.Supp.2d at 247–49. Moreover, this case may be considered to be one involving public significance beyond the identities of those directly involved because First Unum can no longer claim good faith in its ability to pursue the same unreasonable interpretation of its insurance policies with other, similarly situated claimants, and other insurance companies may be precluded from making the same argument. *Cf. Parker*, 310 F.Supp.2d at 399 (finding that, in light of the outcome of the verdict, the case did not involve great public significance beyond those involved before the court). Thus, the public benefit of the decision in this case and the importance of ERISA's public policies, *see generally Aetna Health, Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 2501–02, 159 L.Ed.2d 312 (2004), counsel against a reduction in attorney's fees.

### d. Costs

 Radford has also submitted a bill of costs wherein it seeks $267.10 for costs related to this litigation. Pl's Att'ys Fees Resp., Ex. 3 at 8 (referring to costs as "expenses"). First Unum has objected to $67.10 of these costs, stating that as they pertain to courier charges, fax charges, and travel expenses, they are not allowed under ERISA, 29 U.S.C. § 1132(g). Def.'s Att'ys Fees Opp'n at 11–12. First Unum argues that because these costs are outside of the scope of 28 U.S.C. § 1920,[7] the Court should exercise its discretion and

---

7. Section 1920 provides:
 A judge or clerk of any court of the United States may tax as costs the following:
 (1) Fees of the clerk and marshal;
 (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
 (3) Fees and disbursements for printing and witnesses;
 (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

refrain from awarding these costs under 29 U.S.C. § 1132(g). *Id.* at 10–11.

In guiding the lower courts,

[t]he Supreme Court has attempted to give the word "costs" a consistent meaning in federal law. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 [,441–45], 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) (harmonizing "costs" in Federal Rule of Civil Procedure 54(d) with "costs" in 28 U.S.C. § 1920) .... [T]he Supreme Court noted that the word "costs" in fee-shifting statutes should be given the same meaning as the word "costs" in section 1920 of Title 28, [*West Va. Univ. Hosps. v. Casey*,] 499 U.S. 83, 87 n. 3, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). The Supreme Court went on to note, however, that reasonable out-of-pocket expenses incurred by the attorney and normally charged to the client could be awarded as part of the "attorneys' fees." *Id.* (citing *Northcross v. Bd. of Educ.*, 611 F.2d 624, 639 (6th Cir.1979) ("Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of § 1988")).

*System Mgmt.*, 154 F.Supp.2d at 204.

Under ERISA, the court "in its discretion may allow ... costs of action to either party." 29 U.S.C. § 1132(g); Def.'s Att'ys Fees Opp'n at 10. While section 1132(g) does not define what costs are recoverable, the First Circuit and its district courts have generally declined to award expenses beyond those recognized in section 1920. *Mr. and Mrs. S. v. Timberlane Reg'l Sch. Dist.*, No. 03–260–JD, 2004 WL 502614, *8, 2004 U.S. Dist. LEXIS 4032, at *23 (D.N.H. Mar.15, 2004) (unpublished opinion); *see, e.g., In re San Juan Dupont Plaza Hotel Fire Litig.*, 994 F.2d 956, 964 (1st Cir.1993) (interpreting scope of Fed. R.Civ.P. 54(d) and finding general overhead expenses are not costs under section 1920); *Rodriguez–Garcia v. Davila*, 904 F.2d 90, 100 (1st Cir.1990) (applying section 1920 in civil rights case and ruling "if the costs were reasonably necessary to the maintenance of the' action, then they are allowable"); *Denny*, 880 F.2d at 1470–72 (following *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440–45, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) and noting that courts ought "not lightly infer" authorization for cost-shifting outside the boundaries of sections 1920 and 1821). Courts have expressly held that section 1132(g) does not permit the award of costs beyond those specified in 28 U.S.C. §§ 1821 and 1920. *See Holland v. Valhi Inc.* 22 F.3d 968, 979–80 (10th Cir.1994); *Boyadjian v. CIGNA Cos.*, 994 F.Supp. 278, 280, 282 (D.N.J.1998) *aff'd*, 203 F.3d 816, *cert. denied*, 530 U.S. 1215, 120 S.Ct. 2219, 147 L.Ed.2d 251 (2000); *see also Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir.1996) (limiting "costs of action" to those costs defined by sections 1920 and 1821 or similar such statutory provisions).

▮ First Unum objects to $55.10 in courier charges, $6.00 in fax charges, and $6.00 in travel expenses for counsel because they are not recoverable under 28 U.S.C. § 1920. Def.'s Att'ys Fees Opp'n at 11–12. As matter of law, the $55.10 in courier fees noted here are out-of-pocket expenses that may be deemed part of the attorney's fees. *See System Mgmt.*, 154 F.Supp.2d at 211 (ruling expenses recoverable as either attorney's fees or costs includes "expenses for court filings, process servers, couriers, mailings, deposition transcripts, prints, trial exhibits, and interpreters"); *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 739 (1st Cir.1999) (noting that courier fees and travel expenses are not included in costs absent special circumstances); *but see Wilson*, 135 F.Supp 2d at 74 (disallowing expenses for couriers). In

light of these decisions, the $6.00 fax is allowed as a mailing but the $6.00 in taxi fares are disallowed as a non-compensable expense. Accordingly, the Court concludes that $261.00 is to be awarded Radford as costs.

### 3. Summary of Attorney's Awards

Accordingly, Radford's Motion for Attorney Fees for Counsel Warren H. Pyle and Cathy Highet by Radford Trust [Doc. No. 43] is ALLOWED. Based upon the foregoing reasoning, the Court holds that Pyle and Highet are entitled to $25,112.50 for attorneys' fees and $261.00 in costs, resulting in a total award of $25,373.50.[8]

### B. The Motion for Attorney's Fees for John Doe by Radford Trust is DENIED

■ While Doe indicates that a pro se licensed attorney "appearing for himself ... is entitled to the same attorney's fees which could be taxed in the cause if he had appeared for another," Pl.'s Att'ys Fees Mot. I at 3 (citing 20 Am.Jur.2d *Costs* § 70 (2004)), the facts surrounding this action as well as United States Supreme Court and First Circuit precedent preclude it.

Generally, while awarding attorney's fees is intended to encourage litigation protecting civil rights, the more specific purpose of awarding attorney's fees is to enable potential plaintiffs to obtain the assistance of competent, independent counsel. *Kay v. Ehrler,* 499 U.S. 432, 436–37, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). When a lawyer proceeds pro se however, that lawyer is deprived of "independent" judgment and leaves open the possibility that emotion may undermine efficacy. *See id.* at 437, 111 S.Ct. 1435.

In the context of a Freedom of Information Act case, the First Circuit articulated another rationale for denying attorney's fees to a pro se attorney litigant. The First Circuit reasoned that a pro se attorney should not be entitled to any payment for the time they spend litigating their own case because all pro se litigants, no matter their profession, expend time on their cases resulting in loss of income. *Aronson v. U.S. Dep't of Housing and Urban Develop.,* 866 F.2d 1, 5 (1st Cir. 1989) ("Lawyers are not the only persons whose stock in trade is time and advice."). Thus, the *Aronson* decision implies, the law ought not endorse unequal treatment of attorney pro se litigants vis-à-vis other litigants acting pro se. *See id.*

While the First Circuit has not directly addressed attorney's fees for pro se attorney litigants in ERISA cases, other courts have ruled that, in such cases, attorney's fees are not warranted. *Matassarin v. Lynch,* 174 F.3d 549, 570 (5th Cir.1999) (ruling that because attorney plaintiff "performed most of the legal work and pursued unviable claims, the district court did not abuse its discretion in refusing to award attorneys' fees"); *Bryan v. Michigan Funeral Dir. Ass'n, Inc.,* No. 5:00–CV–9, 2001 WL 311249, *6, 2001 U.S. Dist LEXIS 580, at *18 (W.D.Mich. Jan. 16, 2001) (unpublished opinion); *Boyadjian v. CIGNA Cos.,* 973 F.Supp. 500, 503–04 (D.N.J.1997). Indeed, in the context of this case, the argument against awarding attorney's fees to pro se attorneys may even be stronger given that this attorney's disability claim involves his assertion that he is "disabled" and unable to perform the work of an attorney. Def. Opp'n to Pl.'s Mot. for Att'y Fees for Legal Work by Doe ("Def.'s Opp'n to Att'ys Fees Mot. I") [Doc. No. 50] at 1–2.

---

8. Pyle and Highet's Fees and Costs

| | Hours | Rate | Subtotal |
| --- | --- | --- | --- |
| Pyle | 90.6 | $250 | $22,650.00 |
| Highet | 19.7 | $125 | $ 2,462.50 |
| | | TOTAL FEES: | $25,112.50 |
| | | COSTS: | $ 261.00 |

Radford has not convinced this Court that Doe ought be compensated for the legal work he allegedly performed in connection with his ERISA claim. To support the proposition that a pro se attorney who has retained a second attorney may recover pro se fees, Doe only cites a single state court decision arising in a different context. Pl.'s Att'ys Fees Mot. I at 4 (citing *Department of Conservation on behalf of the People v. Lawless,* 100 Ill.App.3d 74, 82, 55 Ill.Dec. 399, 426 N.E.2d 545 (1981)) (holding that the trial court erred in denying pro se attorney's fees when the trial court did not justify denying the award through the balancing of factors including "the time and labor required, the customary fee for such legal work, the amounts of such awards in similar cases, the novelty of the question presented, the actual necessity of hiring additional counsel, and the attorney's reputation and experience"). For the reasons stated above, Radford's Motion for attorney's fees for legal work allegedly performed by Doe [Doc. No. 44] is DENIED.

### C. Radford's Response to Defendant's Submission Regarding the Award of Benefits and Motion by Radford Trust for First Unum to First Determine the Applicability of the Social Security Offset Provision is ALLOWED

Determining the applicability of the Social Security Offset provision contained within Doe's policy is necessary to calculate the total amount of the award due Radford. *See* section J, *infra.* Thus, this motion [Doc. No. 46] is GRANTED to the extent that it asks First Unum to determine the applicability of the Social Security Offset provision and to incorporate that determination into the calculation of the benefits due Doe within fourteen days of the date of this Memorandum and Order. First Unum should also explain its rationale as to the applicability of the Social

Security Offset provision, and provide any documents on which it relies to Radford and this Court.

### D. The Motion by First Unum Life Insurance Company of America to Strike Response to Defendant's Opposition to Plaintiff's Motion for an Award of Attorney's Fees is DENIED

Local Rule 7.1(b)(3) of the United States District Court for the District of Massachusetts states:

> Additional Papers. All other papers not filed as indicated in subsections (b)(1) and (2), whether in the form of a reply brief or otherwise, may be submitted only with leave of court.

D. Mass. R. 7.1.

■ As Radford submitted their response to First Unum's opposition, without first filing for leave of court, First Unum argues that Radford's response should be stricken from the record. Def.'s Mot. to Strike at 3. First Unum alleges that Radford's "attempt to have the last word on this issue, when [it] was fully able to present its arguments to the Court in its original motion, is simply not permitted under the Local Rules." *Id.* at 4.

While Radford implicitly agrees that acquiring leave to file its response was necessary under Local Rule 7.1(b)(3), it argues that this Court has ample authority to accept the supplemental attorney's fee information and draws the Court's attention to the First Circuit's decision in *Wennik v. Polygram Group Distribution, Inc.,* 304 F.3d 123, 134 (1st Cir.2002). Pl.'s Mot. to Strike Opp'n at 2. In *Wennik,* the court found "no abuse of discretion in the district court's acceptance of . . . revised time records," and noted further that precedent "suggest[s] that acceptance of revised time records is not uncommon." 304 F.3d at 134. In the alternative, Radford requests

that this court retroactively grant leave to file its response. Pl.'s Mot. to Strike Opp'n at 2.

Radford's retroactive request for leave to file "Plaintiff's Response to Defendant's Opposition to Plaintiff's Motion for an Award of Attorney's Fees", made in Radford's Opposition to First Unum's Motion to Strike [Doc. No. 53] is ALLOWED. First Unum's Motion to Strike [Doc. No. 52] is DENIED.

### E. The Motion to Intervene by Bernard Doe to File Reply to Unum's Opposition to Motion for Attorney Fees for Work by John Doe and the Motion for Leave to Request Doe's Additional Attorney Fees for Helping to Prepare this Filing are DENIED

Doe's motion for attorney's fees has been denied. *See* section III.B, *supra.* Thus, Radford Trustee Bernard Doe's Motion to Intervene to File Reply to Unum's Opposition to Motion for Attorney Fees for work by John Doe and Motion for Leave to request Doe's Additional Attorney Fees, [Doc. No. 54] are both DENIED as moot.

### F. The Motion by Radford Trust to Amend Memorandum & Order of June 14, 2004 and the Motion to Supplement the Administrative Record are DENIED

Radford requests first that this Court supplement the administrative record with an affidavit by John Doe purporting to establish that Doe's original employer considered him disabled by schizophrenia at least as early as October 17, 1999. Pl.'s Mot. to Amend 7/14/04 Order & Supple. Admin. R. at 1. Supported by this new assertion, Radford requests that this Court amend its June 14, 2004 Memorandum and Order and thereby: (1) change the effective date for the calculation of prejudgment interest from June 13, 2000 to October 17, 1999; and (2) hold that the prejudgment interest should run until the

date of the Court's "quantum judgment" in lieu of its "merits judgment." *Id.* at 1–2.

### 1. Radford's Motion to Supplement the Administrative Record is DENIED

First Unum does not contest this Court's authority to supplement the administrative record. *See* Def.'s Opp'n to Pl.'s Mot. to Amend Mem. & Order of June 14, 2004 and to Supple. the Admin. R. [Doc. No. 65]. Under Fed.R.Civ.P. 60(b), the Court may "relieve a party … from a final judgment, order, or proceeding for … newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) … [or] any other reason justifying relief from the operation of the judgment." Here, Radford was not hindered in its ability to put forth its best evidence to support all aspects of its case. The supplemental affidavit of Doe puts forth no "newly discovered evidence which by due diligence could not have been discovered" earlier. Nor does Doe's affidavit justify relief or modification of the operation of the judgment. This Court will not allow Radford to supplement the administrative record at this point in order to support elements of liability that could, and should, have been properly placed in the record when the principal case was filed and ruled upon. Radford's Motion to Supplement the Administrative Record [Doc. No. 59] is thus DENIED.

### 2. Radford's Motion to Amend the June 14, 2004 Memorandum and Order is DENIED

Radford proposes two amendments to the June 14, 2004 Memorandum and Order of the Court: (a) making the effective date for interest October 17, 1999; and (b) holding that the prejudgment interest continues until the date the court

quantifies damages. Pl.'s Mot. to Amend 7/14/04 Order & Supple. Admin. R. at 1. Even had this Court granted Radford's motion to supplement the administrative record, neither the conclusory statements contained within Radford's supplemental affidavit, nor the facts already in the record support amending this Court's June 14, 2004 Order.

### a. The effective date for the calculation of interest is June 13, 2000, not October 17, 1999

The Court has already carefully evaluated and determined the effective date of prejudgment interest. In its June 14, 2004 Order, this Court found that

> the information that First Unum received in Doe's initial claim application was sufficient to support [the] determination ... that Doe was entitled to receipt of benefits as of October 17, 1999. Upon closer examination of the record, the Court has found information to which neither party pointed, showing that Doe did not submit an Employer's Statement and Job Analysis until June 13, 2000. *See* R. at FULCL00015–22. The information therein was important and arguably necessary for First Unum to reach a decision on Doe's benefits, so the Court revises its earlier finding and holding to reflect that Doe was eligible for benefits as of June 13, 2000.

*Radford Trust,* 321 F.Supp.2d at 253.

Even had the Court accepted the affidavit of Doe, it does not alter this Court's previous finding that: (1) First Unum required the Employer's Statement and Job Analysis information in order to determine whether Doe was disabled; and (2) that information was not received by First Unum until June 13, 2000. *Id.* Contrary to Radford's assertion, the information provided earlier than June 13, 2000 from Doe's physician did not provide First Unum with working condition information,

i.e., occupational duties, employment history, etc., necessary to make the disability determination. This information was contained within Doe's Employer Statement and Job Analysis and, as Radford does not contest, the Employer Statement and Job Analysis was not submitted to First Unum until June 13, 2000.

In an attempt to circumvent this fact, Radford submits Doe's supplemental affidavit to assert that Doe's former employer intentionally delayed furnishing the appropriate forms and information to First Unum. In support of these allegations, Radford offers only Doe's conclusory statements within the supplemental affidavit; no other corroborating evidence is proffered. For these reasons, the Court will not amend its judgment and affirms that the effective date for the calculation of interest is June 13, 2000, not October 17, 1999.

### b. Prejudgment interest is calculated as running until the date of the underlying "merits judgment," not the "exact quantum judgment"

Again, even assuming that the Court had granted Radford's motion to supplement the administrative record, the cases cited in Radford's motion do not support amending this Court's June 14, 2004 Order.

As this Court has previously noted,

> [t]here are often two distinct judgments in civil rights cases. The first, known as the "merits judgment," grants the prevailing party the right to recover attorney's fees. The second, known as the "exact quantum judgment," defines the precise amount of the fee award. The circuits are split as to when interest on an attorney fee award begins to accrue, with the Fifth, Sixth, Eighth, Ninth, Eleventh, and Federal Circuits holding that interest begins to accrue under sec-

tion 1961(a) from the date of the merits judgment, and the Third, Seventh, and Tenth Circuits holding that interest begins to accrue on the date of the exact quantum judgment.

*Mogilevsky,* 311 F.Supp.2d at 224 (internal citations omitted). This Court will not amend its June 14, 2004 Order and affirms, consistent with its holding in *Mogilevsky,* that interest on the awarded attorney's fees and costs shall accrue as of the date of the underlying merits judgments pursuant to 28 U.S.C. § 1961(a).

For the reasons cited above, Radford's motion to supplement the administrative record [Doc. No. 59] is DENIED and Radford's Motion to Amend the June 14, 2004 Memorandum and Order [Doc. No. 59] is DENIED.

### G. The Motion to Award Damages Under State Law by Radford Trust is DENIED

■ On September 3, 2004, Radford requested pursuant to Fed.R.Civ.P. 59(e) that this Court amend its June 14, 2004 judgment and award multiple damages and additional attorney's fees under Chapter 93A. Pl.'s State Damages Mot. at 1. In support of its request, Radford asserts: (1) its withdrawal of its Chapter 93A claim, *i.e.,* Count II of its original Complaint, ought not be treated as abandonment of additional remedies available under Chapter 93A; and (2) Chapter 93A is not preempted by ERISA because two recent Supreme Court decisions purportedly clarify the limitations of preemption and would allow Radford's motion for damages. *Id.*

#### 1. Radford withdrew his claim for alleged violations of Massachusetts state law and is therefore not entitled to damages under Massachusetts State law

Damages are only appropriate as to the claims upon which a plaintiff has prevailed.

*See generally Culebras Enter. Corp. v. Rivera–Rios,* 846 F.2d 94, 103 (1st Cir. 1988) (holding that "reasonable costs that can be awarded pursuant to section 1988 are only those related to plaintiffs' successful claims," and upholding denial of costs related to a particular claim because "[p]laintiffs did not prevail on that claim"). A plaintiff must "receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987). Thus, a party cannot recover damages under Chapter 93A without first prevailing on a Chapter 93A claim for liability. *See, e.g., Ciardi v. Hoffmann–La Roche,* 436 Mass. 53, 66 n. 20, 762 N.E.2d 303 (2002) (observing that "consumers who prevailed on claims of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" may recover damages and that relief is available to "the extent that the plaintiff is able to prevail on the issue of liability"). Other district courts have denied motions under Rule 59(e) because "other violations ... were not overlooked; they were simply not pursued previously by [plaintiff]." *Belmont v. Associates Nat'l Bank,* 219 F.Supp.2d 340, 346 (E.D.N.Y.2002) (denying motion to reopen discovery to seek out potential additional violations). As Radford's Chapter 93A claim was withdrawn, *see Radford Trust,* 321 F.Supp.2d at 226 n. 1, the Court did not—and does not—make any findings concerning it.

#### 2. Consideration of Radford's claims that Mass. Gen. Laws ch. 93(A) is not preempted by ERISA is not appropriate at this time

Radford brings its motion under Rule 59(e) in light of two recent Supreme Court cases, *Kentucky Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003) and *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 124 S.Ct.

2488, 159 L.Ed.2d 312 (2004), alleging these cases affect the preemption of state law claims by the federal framework of remedies available under ERISA. *See* Pl.'s State Damages Mot. at 3–4. Consideration of whether the status of preemption of claims under Chapter 93A was changed by the recent Supreme Court cases is not necessary here, however, because Radford did not pursue its claim under that law. As the only claims pursued were alleged violations of ERISA, the effect of the most recent Supreme Court decisions upon the preemption of state law by ERISA is not before the Court, and the Court expresses no opinion concerning it.

Because Radford's September 3, 2004 motion to award damages under state law seeks relief not requested in the complaint and the effect of recent decisions by the Supreme Court is not at issue, this Court will not use Radford's motion as a vehicle to reconsider its previous decisions. Accordingly, Radford's Motion to Award Damages under State Law [Doc. No. 70] is hereby DENIED.

### H. The Motion for Reconsideration Of Order Denying Motions As Moot by Radford Trust is ALLOWED

Radford's Motion for Reconsideration of the Motions Denied as Moot on January 19, 2005 [Doc. No. 74] is ALLOWED. This Order addresses and resolves all outstanding motions before the Court.

### I. The Motion by Radford Trust For Declaration that First Unum has Repudiated the Court's Judgment and its Administrative Responsibilities Under the Insurance Policy so as to Entitle Plaintiff to Sue Immediately for Benefits Beyond the Twenty–Four Month Period is DENIED

In its Order dated March 31, 2004, this Court held "[a]ny determination as to whether Doe's disability is a 'mental' one or a 'physical' one for the purposes of continuing receipt of benefits under the Policy is for First Unum, rather than this Court, to make in the first instance." Order of 3/31/04 at 2. While Radford's motion that this Court declare that First Unum has repudiated the Court's judgment [Doc. No. 75] is DENIED, this Court ordered First Unum, within thirty calendar days from March 10, 2005, to make the determination whether Doe's disability is a "mental" or "physical" one and to provide such determination to Radford Trust, its beneficiary, Doe, and the Court. *See* Order of 3/10/05, at 1 [Doc. No. 78].

### J. The Amended Judgment Clarifying Appropriate Calculation Of Pre–Judgment Interest And Award Of Damages

In its Order issued on March 31, 2004, this Court held that Radford is entitled to recover prejudgment interest from October 17, 1999 onward, at the rate of 12 percent annum or the average rate of return for First Unum's investments between October 17, 1999 and March 31, 2004, whichever is greater. Order of 3/31/04 at 2. On April 14, 2004, First Unum submitted a memorandum explaining the calculation of long-term disability benefits payable to Radford, pursuant to this Court's March 31, 2004 Order. *See* Def.'s Benefits Submission. Therein, First Unum attested that Radford is entitled to a total award of $192,902.50. *Id.* at 4. Radford submitted its response on April 28, 2004, proposing that this Court enter judgment for a total of $213,227.11. Pl.'s Offset Mot. & Resp. to Def.'s Submission at 6. In this Court's June 14, 2004 Order, it amended the March 31, 2004 Order, holding that prejudgment interest should run from June 13, 2000 and stating that the Court would issue an Amended Judgment clarifying the appropriate calculation of

prejudgment interest. *Radford Trust,* 321 F.Supp.2d at 252 n. 21, 253, 260.

■ Accordingly, the Court holds that Radford's beneficiary, Doe, was entitled to receive benefits under the First Unum policy that is the subject of this action ("Policy") as of June 13, 2000, and for twenty-four months thereafter, and that Radford is entitled to collect on Doe's behalf. The Court further holds that for purposes of paying Doe's benefits, First Unum must treat Doe as having been continually disabled between that date and the current date, and as having complied with any requirements under the Policy for continued receipt of benefits. To the extent that Doe remains qualified for continuing receipt of disability benefits after this date, he must comply with such requirements as the Policy imposes.

■ The Court also holds that Radford is entitled to prejudgment interest from June 13, 2000, onward at the rate of either 12 percent annum, *see* Mass. Gen. Laws ch. 231 § 6C, or the average rate of return for First Unum's investments between June 13, 2000, and this date, whichever is higher. The Court further holds that Radford is entitled to postjudgment interest on the benefits judgment (including prejudgment interest accrued to date), and the cost and fee awards this Court has determined to be appropriate, at the statutory rate of 4.26%. *See* .28 U.S.C. § 1961(a); Federal Reserve Statistical Release, available at http://www.federalreserve.gov/releases/h15/current (last modified Oct. 30, 2005).

Accordingly, within fourteen days from this date, First Unum shall submit to the Court and to Radford an accurate calculation of the average rate of return on its investments during the period between June 13, 2000, and this date, as well as such materials as are necessary to make such a calculation, unless the parties shall agree as to said rate of return or agree that it is less than twelve percent. Radford shall have twenty-eight days from this date to submit any materials challenging it.

Also within fourteen days from this date, First Unum shall submit to the Court and to Radford an accurate calculation of the benefits and interest to which Radford was entitled as of this date, as well as such materials as are necessary to make such a calculation, unless the parties shall agree to the amount owed. In making such a calculation, the Court holds that the interest will be calculated using simple and not compound interest. *Radford Trust,* 321 F.Supp.2d at 257 n. 25 (citing *Coupounas v. Madden,* 401 Mass. 125, 132, 514 N.E.2d 1316 (1987); *Inhabitants of Tisbury v. Vineyard Haven Water Co.,* 193 Mass. 196, 198, 79 N.E. 256 (1906)). Any determination as to the applicability of the social security offset provision is for First Unum, rather than this Court, to make in the first instance. First Unum's calculations will reflect whether and how the social security offset provision applies in its calculations of the benefits owed Doe. Lastly, the Court notes that First Unum's calculations should reflect that February 2004 has 29 days given that 2004 is a leap year. *See* Pl.'s Offset Mot. & Resp. to Def.'s Submission at 2. Radford shall have twenty-eight days from this date to file any materials challenging First Unum's calculation.

## IV. CONCLUSION

For the foregoing reasons,

1. Radford Trust's April 14, 2004 Motion for Attorney Fees [Doc. No. 43] is ALLOWED in the total amount of $25,373.50;

2. Radford Trust's April 26, 2004 Motion for Attorney Fees for John Doe [Doc. No. 44] is DENIED;

3. Radford Trust's April 28, 2004 Motion For First Unum to First Determine the Applicability of the Social Security Offset Provision [Doc. No. 46] is ALLOWED;

4. First Unum's May 12, 2004 Motion to Strike Response to Defendant's Opposition to Plaintiff's Motion for an Award of Attorney's Fees [Doc. No. 52] is DENIED. Radford's retroactive request for leave to file a response to Defendant's Opposition to Radford's Motion for Attorneys Fees [Doc. No. 49], made in Plaintiff's Opposition to First Unum's Motion to Strike [Doc No. 53], is ALLOWED.

5. Bernard Doe's May 26, 2004 Motion to Intervene to File Reply to Unum's Opposition to Motion for Attorney Fees for work by John Doe, and, Motion for Leave to Request Doe's Additional Attorney Fees for Helping to Prepare this Filing [Doc. No. 54] are DENIED;

6. Radford Trust's July 16, 2004 Motion to Amend the Court's Memorandum & Order of June 14, 2004 and Motion to Supplement the Administrative Record [Doc. No. 59] are DENIED;

7. Radford Trust's September 3, 2004 Motion to Award Damages Under State Law [Doc. No. 70] is DENIED;

8. Radford Trust's January 26, 2005 Motion for Reconsideration of Order Denying Motions as Moot [Doc. No. 74] is ALLOWED and satisfied with this Order; and

9. Radford Trust's February 10, 2005 Motion For Declaration that First Unum has Repudiated the Court's Judgment and its Administrative Responsibilities Under the Insurance Policy so as to Entitle Plaintiff to Sue Immediately for Benefits Beyond the Twenty–Four Month Period [Doc. No. 75] is DENIED.

10. Within fourteen days of this date, First Unum shall submit to the Court and to Radford an accurate calculation of the benefits and interest to which Radford was entitled as of this date, as well as such materials as are necessary to make such a calculation, unless the parties shall agree to the amount owed and shall submit an agreed form of judgment.

SO ORDERED.